BENJAMIN WOOLLEY, as Executor, etc., Appellant, v. SARAH E. WOOLLEY et al., Respondents.

The formal execution of a will may not be presumed, in opposition to positive testimony, merely upon the ground that the attestation clause is in due form.

The attestation to the codicil to a will, presented for probate, was in due form, and beneath it were the signatures of the two witnesses, with their places of residence; one of them testified that he did not see the testatrix sign the codicil and did not think she acknowledged to him that she had signed it; that the signature beneath the attestation clause was his; that he did not know, but presumed the clause was there when he signed; that he signed in the presence of the testatrix and of the other witness at her request, and the other witness then signed in his presence; that he was a lawyer and knew it was not customary unless the instrument was a will to place the residence of a witness after his name. The other witness testified that one of the signatures following the attestation clause was hers; that she did not remember seeing the testator sign the paper; that the latter did not in the presence of witness acknowledge it to be a codicil to her will, and witness did not remember her saying any thing about it. Witness further testified that she remembered signing and that the other witness was present and signed; that she signed at the request of the testatrix who said "I have a paper here I want you to sign;" that she put her place of residence after her name, because the other witness told her it was necessary, or because she saw he had added his place of residence; that she knew the testatrix did not state it was a codicil, and that witness did not know it was, but supposed she knew she was signing as a witness. The testimony was given within a year after the alleged codicil was executed. *Held*, that the testimony was insufficient to authorize the admission of the codicil to probate.

(Submitted February 8, 1884; decided February 26, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order

made September 14, 1880, which affirmed a decree of the surrogate of the county of Queens, admitting to probate an alleged codicil to the will of Margaretta Woolley, deceased.

The material facts are stated in the opinion.

*Benjamin W. Downing* for appellant. It was the duty of the testator at the time of subscribing or acknowledging his subscription to declare the instrument so subscribed to be his last will and testament. (2 R. S. 63, § 40; *Gilbert* v. *Knox*, 52 N. Y. 128; *Mitchell* v. *Mitchell*, 16 Hun, 97; 77 N. Y. 596.) The statute contemplates the subscription and publication as two distinct acts, both of which are necessary to the due execution of the will. (*Lewis* v. *Lewis*, 11 N. Y. 522; *Buskin* v. *Buskin*, 36 id. 416; *Jackson* v. *Jackson*, 39 id. 153, 161; 67 id. 409.) The declaration must be made to each witness at the time of subscribing or acknowledging, in the presence of the parties, and must point to the particular instrument in process of execution. (*Hunt* v. *Moultrie*, 3 Bradf. 322; *Wilson* v. *Hettrick*, 2 id. 427.) Conjectures and inferences drawn from the fact of the attestation clause are inadmissible in view of the positive testimony of the witnesses, that they did not see or hear it read. (*Tarrant* v. *Ware*, 25 N. Y. 429, note; *Lewis* v. *Lewis*, 11 id. 220; *Brown* v. *Cady*, 19 Wend. 477; Grant on Exrs., § 440; *Newell* v. *Doty*, 33 N. Y. 83, 94; *Butler* v. *Bense*, 1 Barb. 526; *Morehouse* v. *Mathews*, 2 N. Y. 514.)

*Harrison S. Moore* for respondents. It is proper for the court to consider the attestation clause and to be governed by it where the recollection of the witnesses is at fault. (*Orser* v. *Orser*, 24 N. Y. 51; *Peck* v. *Cary*, 27 id. 9, 24; *In re Pepoor*, 91 id. 255.) The undisputed testimony that the testatrix handed the witnesses the instrument with her name upon it, requesting them to sign it as witnesses, is in law an acknowledgment of her signature. (*Peck* v. *Cary*, 38 N. Y. 32, 33; *Willis* v. *Mott*, 36 id. 486; *Gaze* v. *Gaze*, 3 Curt. 451; 27 N. Y. 32; *Kirgwin* v. *Kirgwin*, 3 Curt. 607.) That the pre-

scriptions of the statute were complied with may be inferred from the circumstances without any direct testimony. (*Peck* v. *Cary*, 27 N. Y. 30; *Lewis* v. *Lewis*, 11 id. 224; *Trustees, etc.*, v. *Calhoun*, 25 id. 425, 426 and note; *Rugg* v. *Rugg*, 83 id. 594; *In re Pepoor*, 91 id. 255; *Orser* v. *Orser*, 24 id. 52; *Weeb* v. *Dye*, 18 W. Va. 380; *Nickerson* v. *Buck*, 12 Cush. 332; *Willis* v. *Mott*, 36 N. Y. 496.)

EARL, J. Margaretta Woolley died in June, 1879, leaving a will dated March 1, 1878, and a paper purporting to be a codicil thereto, dated October 21, of the same year. The executor named in the will presented both papers to the surrogate for probate, and the hearing before him was had in November, 1879. Proof of the will was not contested; but the executor contested the proof of the alleged codicil. The surrogate admitted both papers to probate as the will of the decedent; and his decree was upon appeal by the executor to the General Term of. the Supreme Court affirmed, and the executor then appealed to this court.

The sole question presented for our determination is whether the paper purporting to be a codicil to the will of the deceased was executed with the formalities required by the statute.

Beneath the signature to the codicil is an attestation clause reciting the execution of the codicil with the formalities required by the statute, and beneath that are the signatures of the two witnesses, Arthur Van De Water and Mary W. Hewlett, with the place of their residence. These two witnesses were the only persons who gave evidence as to the execution of the codicil; and I will abstract the whole of their evidence so far as it is material. Upon his direct examination Van De Water testified that he knew the deceased; that he did not see her sign the codicil, and he did not think she acknowledged to him that she had signed it. On his cross-examination he testified that the signature at the end of the attestation clause was his; that he did not know whether that clause was there when he signed it, but presumed it was; that he was at Mr. Woolley's house, in a room with Mrs. Woolley and the other witness

when he signed it; that he signed it at her request, she handing him the paper and the pen; that Mrs. Hewlett signed it in his presence; that he was a lawyer by profession, and had been practicing by himself nearly three years; that he studied law with the counsel for the executor, and was in his office about two years; that he knew it was not customary, unless the instrument was a will, to place the witness' residence after his name. Mrs. Hewlett, the other witness, after testifying that she had resided in the family of Mr. and Mrs. Woolley for a number of years then past, and that she was a second cousin of Mrs. Woolley, was asked this question: "Did you see Mrs. Woolley sign that paper?" She answered: "No, I do not remember seeing her sign that paper; she did not, in my presence, acknowledge that instrument to be a codicil to her last will; I do not remember her saying any thing about it; the signature at the bottom of the attestation clause, immediately under Mr. Van De Water's is mine." She was then further examined, and testified as follows: "I remember signing this paper, and also remember Mr. Van De Water being present and signing it also; no one was present except testatrix, Mr. Van De Water and myself; Mrs. Woolley had the paper first, and I signed it at her request; I did not know any thing about the codicil before that; I put my place of residence after my name; I might have done so because Mr. Van De Water told me that it was necessary, or because I saw that he had added his residence, or I might have been told to do so; Mrs. Woolley, when she asked me to sign the paper, said: I have a paper here that I want you to sign; I did not know that it was a will; I suppose I must have known that I was signing it as a witness; I know that Mrs. Woolley did not state that it was a codicil; the paper I signed was lying on the table when she asked me to sign it."

This is all the evidence, and it falls far short, it seems to me, of what the statute requires. This evidence was given within about a year after the alleged codicil was executed, and hence this case is not to be treated like one where an attempt is made to prove a will after the lapse of a long time, when witnesses

may not be able to testify fully to the statutory requirements from a failure of memory. In such case a regular and full attestation clause, with very slight proof or confirmatory circumstances, may be held sufficient. In *Wilson* v. *Hetterick* (2 Brad. Sur. R. 427), the learned surrogate said : " Where there has been such a lapse of time between the act and the time when the witness is called upon to testify concerning it as to justify the inference that his recollection of the circumstances may be imperfect, due celebration of the forms necessary to make a valid will may be presumed, unless there be evidence repugnant to such a presumption. To authorize an inference of this kind, however, it is not sufficient for the witnesses merely to say they do not recollect, or that the requisite form may have been complied with, and have escaped their memory. But there must be enough in the circumstances, and the remote date of the transaction to lay the defect in the proof upon the infirmity of the human memory." In *Lewis* v. *Lewis* (11 N. Y. 220), Judge ALLEN said : " It (the formal execution of a will) cannot be presumed, in opposition to positive testimony, merely upon the ground that the attestation clause is in due form, and states that all things were done which are required to be done to make the instrument valid as a will."

Here, as to essentials, there does not seem to have been a mere failure of memory on the part of the witnesses. They both testify that the testatrix did not sign the codicil in their presence, and so far they contradict the attestation clause which recites that she did. There is no proof that she acknowledged the signature to the witnesses ; and there is nothing from which it can properly be inferred that she did so. There is no evidence that she called the attention of the witnesses to her signature, or even that they saw it ; or that they heard or knew the contents of the attestation clause. The proof is quite positive also that she did not declare the paper to be a codicil to her will ; at least one of the witnesses, Mrs. Hewlett, did not even know that the paper was a codicil. According to her evidence the testatrix simply produced the paper, and asked her to

sign it as a witness without saying what the paper was, or saying any thing about it.

Here there was not even the presumption that is sometimes indulged in from the fact that the will was drawn by a lawyer, and executed under his supervision, for this codicil bears internal evidence that it was not drawn by a lawyer; and while Van De Water was a lawyer, he was simply called upon to witness the instrument; and it can be inferred that he knew that it was of a testamentary character only from the simple fact that he wrote his place of residence after his signature.

If it should finally be held that a will could be admitted to probate upon such evidence, the statute prescribing the formalities with which wills should be executed, would be substantially nullified and its wise purpose defeated. All that would then be needed would be a formal attestation clause, and then the will could be admitted to probate without any further evidence from the witnesses as to the requisite formalities, and even, as in this case, against their evidence.

It is not denied that a will may be proved, even against the evidence of the subscribing witnesses, by other sufficient evidence, and that the due execution of a will may be inferred from a regular attestation clause, and all the surrounding circumstances tending to show due execution. But here there is nothing from which the inference of due execution can be legitimately drawn.

In the case of *Mitchell* v. *Mitchell* (16 Hun, 97, affirmed in this court, 77 N. Y. 596) the proponents of a will made a much stronger case than was made here, and probate was denied; and our decision in that case is ample authority for the conclusion we reach in this.

The judgment of the General Term, and, the decree of the surrogate should be reversed, and a new hearing had before the surrogate; costs of the party finally prevailing to be paid out of the estate.

All concur.

Judgment accordingly.