ORANGE COUNTY.—HON. R. C. COLEMAN, SURRO-
GATE.—February, 1885.

RUMSEY *v.* GOLDSMITH.

*In the matter of the application for probate of a paper propounded as the will of* LUTHER H. RUMSEY, *deceased.*

Upon an application, made in January, 1885, for the probate of a paper propounded as decedent's will, dated November 14th, 1884, it appeared that, at the time of the alleged execution, decedent was confined to his bed by his last illness; that the paper, which had been prepared by one D., who was not a lawyer, at decedent's request, was read to the latter by the draftsman, and, its contents being approved, signed in the presence of D. alone; that D. then summoned from an adjoining room the two persons whose names appeared as those of subscribing witnesses, who, when they entered decedent's apartment, found him bolstered up in bed, and the paper lying, at his side, upon a stand whereon they wrote; that decedent was then asked by D. whether he acknowledged that to be his last will and testament, whereto he assented by nodding or bowing his head; whereupon D. said to the witnesses, successively, "you will please sign your name here," indicating the place, with which request they each complied. There was no conversation between decedent and the subscribing witnesses. The paper was not sealed, and was written entirely upon one page, which lay open before the witnesses, so that they could have seen the decedent's subscription. The witnesses' signatures were preceded by an attestation clause in the ordinary form, reciting that the document was "signed, sealed, published and declared," etc., in the witnesses' presence.—

*Held,* that, in view of the false recitals in the attestation clause, and the brevity of the period which elapsed between the signing and the examination of the witnesses, this clause could not be resorted to, for the purpose of raising any presumption of due execution; that the question addressed to the decedent, by the draftsman, in the witnesses' presence, called for nothing more than an acknowledgment of the nature of the instrument; and that probate must be refused on the ground of non-compliance with the requirement of the statute (2 R. S., 63, § 40), that the testator's *subscription,* if not made in their presence, "shall be acknowledged by him to have been [so] made to each of the attesting witnesses."

*It seems,* that an affirmative answer to the question, "do you acknowledge in the presence of these witnesses, that you signed this paper, as your last will and testament, knowing fully its contents?" is not an acknowledgment of subscription, within the meaning of the statute of wills.
Baskin v. Baskin, 36 *N. Y.,* 416—doubted.

PETITION for the probate of decedent's will, presented by Rienzi A. Goldsmith, the executor therein named; opposed by Warren G. Rumsey, decedent's son.    The facts are stated in the opinion.

GEORGE N. GREENE, *for executor.*

H. A. WADSWORTH, *special guardian.*

THE SURROGATE.—The only question presented for determination, is whether the paper, purporting to be the last will and testament of the deceased, was executed with the formalities required by the statute; and it is conceded that the only one about which there is any question, is whether the testator, not having executed the will in the presence of the attesting witnesses, acknowledged his subscription to each of them.    The provisions of the statute are:  "1*st.*   It shall be subscribed by the testator at the end of the will;  2*d.*  Such subscription shall be made by the testator in the presence of each of the attesting witnesses, *or shall be acknowledged by him to have been so made, to each of the attesting witnesses* (2 R. S., 63, § 40).

Upon this point, three witnesses have been sworn and testified,—the two attesting witnesses, and the person who prepared the will and undertook the direction of its execution.   The witnesses all agree

that the will was not signed in the presence of the attesting witnesses. It appears from the testimony of Mr. Denniston, the person who prepared the will, that the will was signed by the deceased in his presence, while they were alone together, and that, while the testator was in the act of signing the will, Mrs. Giles, one of the attesting witnesses, opened the door of the room in which they were engaged, and looked in, but immediately closed the door again, without coming in; she testifies that, when she looked in, she saw the deceased writing, and that, when she was afterwards asked to be one of the witnesses, she supposed, from the size and color of the paper of the will, that it was the same paper she saw him writing on. The deceased was, at this time, very ill, and died during the next week. After the will was signed by the deceased, the two witnesses were called from the adjoining room, and Wilbur F. Giles testifies as to what occurred after that, as follows: "After we got in there, I think in about five minutes, Mr. Denniston asked Mr. Rumsey if he acknowledged that (the will) as his last will and testament; he (Mr. Rumsey) nodded his head, and after that Mr. Denniston said to me: 'You will please sign your name here'—showed me where to sign, and then my wife—he said the same thing to her, and she signed it." Q. "Was there anything said to him, Mr. Rumsey, about it?" Ans. "No, nothing else said; we went right out; we wasn't in there but a few minutes." Q. "Did Mr. Rumsey hold any conversation with you, or talk with you?" Ans. "No, sir; he didn't say a word."

Mary A. Giles, the wife of the last witness, testifies:

Q. "Did you see Mr. Rumsey sign it (the will), or not?" Ans. "No, sir." Q. "After you got there, what was done?" Ans. "Mr. Denniston asked Mr. Rumsey if he acknowledged that that (the will) was his last will and testament, and Mr. Rumsey bowed his head." Q. "What did you then—you and your husband—sign your names?" Ans. "Yes, sir; my husband first." Q. "How did you come to sign it?" Ans. "Mr. Denniston asked us." Q. "In the presence of Mr. Rumsey?" Ans. "Yes, sir." On the cross-examination, she says that, at this time, Mr. Rumsey was bolstered up, half sitting and half lying in bed; that the stand upon which they signed their names was near the head of his bed. "When Mr. Denniston asked us to sign, he stood just a little way from the bed, quite near the stand." Q. "Where Mr. Rumsey could hear?" Ans. "He couldn't help hear him." And, when asked if Mr. Rumsey did anything to show whether he heard Mr. Denniston ask them to sign, she said: "He didn't say anything; he looked towards us."

At a subsequent hearing of this case, Mr. Denniston was produced as a witness for the proponent. He testified that, at the request of the testator, he prepared the will offered for probate, and, after it was written, read it over to the deceased, who said it expressed his wish, and then signed it at the foot, in his (Denniston's) presence, and then the witnesses were called in. "They came into the room; they stood near the door where they entered, and I told them that the will was all ready for their signatures." Q. "Did they come up near to you then?" Ans.

" They came up behind me then; the testator had got back in bed before they got in, and the bed clothes were drawn over him; the stand, on which the paper lay that he had signed his name to, was there at the bed side, and the witnesses stood in the rear, a little to one side. I was standing up in front of the stand. I placed my hand upon the paper and took the acknowledgment of the testator." Q. "State what you said." Ans. "Do you acknowledge, in the presence of these witnesses, that you signed this paper, as your last will and testament, knowing its contents, or knowing fully its contents?" Q. "What did he say?" Ans. "He nodded his head, and said, 'I do'—that was the response that he made." Q. "Did anything else take place then— what did they do?" Ans. "After he had made his acknowledgment, Mr. Giles signed his name, and Mrs. Giles also." Mrs. Giles, who was present and heard the testimony of the last witness, was then recalled, and, when asked if she had any recollection as to whether there was anything more said or done than what she had already testified to, answered: "No."

The attestation clause is as follows : "Signed, sealed, published and declared by the above named testator at the date thereof, to be his last will and testament in our presence, who, at his request, in his presence, and in the presence of each other, hereto set our hands as subscribing witnesses.

" WILBUR F. GILES,
MARY ANNA GILES."

There is no evidence that this clause was read by either of the witnesses, or by any one else to them, before signing; the will is not sealed; the will bears date November 14th, 1884, and the subscribing witnesses were examined on January 12th, 1885.   The force of a presumption in their favor has, in many instances, been given by the courts to the recitals of those facts stated in attestation clauses, where there has been such a lapse of time, between the act and the time when the witness is called upon to testify concerning it, as to justify the inference that his recollection of the circumstances may be imperfect, or where the witness is a person unfamiliar with the legal formalities necessary to a proper execution of a will.   But a formal execution of a will cannot be presumed in opposition to positive testimony merely upon the ground that the attestation clause is in due form (Lewis v. Lewis, 11 *N. Y.*, 220).   In this case, there is nothing which warrants any presumption in favor of anything contained in the attestation clause. We know that two facts there stated are not true. The will was not signed or sealed in the presence of the witnesses; nor has there been any such lapse of time as will justify the inference that the recollection of the witnesses is imperfect.   We must, therefore, ascertain the facts from the evidence offered, without depending upon the attestation clause to aid us.

Unquestionably the will was not signed in the presence of Mr. Giles; nor do I think that what Mrs. Giles witnessed at the time she stood at the opened door, while the testator was signing, can be the signing in her presence contemplated by the statute:

she had not at that time been called upon to witness its execution, nor was it then communicated to her what it was that was being signed. So far as she can say, it might have been any other paper of that color, that he was then signing. But whether this may be call a signing in her presence, required by the statute, or not, the will was not signed in the presence of Mr. Giles; and, therefore, we still have to determine whether the testator acknowledged his subscription of the will to the subscribing witnesses (to each of them in my opinion, but) at least to Mr. Giles. If he did so to Mr. Giles, he did to Mrs. Giles, for both were present at the time when it occurred, if it occurred at all. If it was done, it was done in the question asked the deceased by the witness, Denniston, when he did what he calls "taking the testator's acknowledgment."

Upon this point, we have the testimony of Mr. and Mrs. Giles that the question asked Mr. Rumsey was— if he acknowledged that that was his last will and testament; to which question they say Mr. Rumsey simply nodded his head. The witness, Denniston, says the question asked by him was: "Do you acknowledge, in the presence of these witnesses, that *you signed this paper* as your last will and testament?" Even if the evidence of the witness, Denniston, is to be taken as conclusive, as to the form of the inquiry made by him of the decased—that it was: "Do you acknowledge, in the presence of these witnesses, *that you signed this paper* as your last will and testament?" it is doubtful if it called for more than an acknowledgment of the nature of the instrument.

A testator's answer to the inquiry made by one of the witnesses : " Do .you request me to sign the will as a witness ? " has been held to be both a publication and a request to sign as a witness (Coffin v. Coffin, 23 *N. Y.*, 9 ; Rieben v. Hicks, 3 *Bradf.*, 353). But in those cases, the nature of the question directed the mind of the witness to both facts,—the nature of the instrument, and the desire of the testator to have them sign as witnesses.

Judge ALLEN, in Lewis v. Lewis (11 *N. Y.*, 220), says : " If the party does not subscribe in their presence, then the signature must be shown to them, and identified and recognized by the party, and in some apt and proper manner acknowledged by him as his signature. The statute is explicit, and will not be satisfied with any thing short of a substantial compliance with its terms." The question asked by Mr. Denniston directs the mind to the nature of the paper signed, and not to the genuineness of the signature ; and so these witnesses understood it, as is plain to be seen from what they say Mr. Denniston asked Mr. Rumsey.

This case does not, however, have to rest upon this conclusion, as to the force to be given to the publication in the form testified to by the witness, Denniston ; for I am satisfied that his is not the correct version of what he asked the deceased. Mr. Denniston is not a lawyer ; and there is no evidence, except the mere fact that he was asked to draw this will, that he had any knowledge of the legal formalities necessary to a proper execution of a will. From their appearance upon the stand, Mr. and Mrs. Giles

appeared to be intelligent people, with a clear recollection of what had transpired; fully as much so as the witness, Denniston. Mrs. Giles, after hearing Denniston's testimony, still insisted that she had no different recollection. If the Gileses manifested any bias, it was in favor of the will. There is, therefore, no reason why more weight should be given to his version of the question than to theirs. It may very well be that the witness, Denniston, is influenced by a desire to make a success of what he undertook, or his memory may be influenced by a knowledge of the usual form of acknowledgment of legal documents for record, and an intention to use that form. This supposition is strengthened by the witness's own statement that he took the testator's acknowledgment. The form of the question, as given by Mr. and Mrs. Giles, would have been the natural one to be used, if the will *had been signed* in the presence of the witnesses; and the form of the attestation clause shows that it was Mr. Denniston's intention to have it done in that way. I, therefore, conclude that the witness, Denniston, asked the deceased if he acknowledged that that (the paper on the stand) was his last will and testament.

The whole instrument was written upon one page, and was open before the witnesses upon the stand where they signed it; they could have seen the testator's signature, if they looked at it; but no mention or reference was made of or to it in expressed words. Was the answer made by the testator under these circumstances a substantial compliance with the statute requiring him to acknowledge the subscription

which he had made to each of the subscribing witnesses? In Mitchell v. Mitchell (16 *Hun*, 97; affi'd, 77 *N. Y.*, 596), it was held that "the testator must acknowledge that that which purports to be his subscription was in fact made by him. This, too, is quite distinct from the testator's declaration of the nature of the instrument, which is necessary in either case. . . . . . Acknowledgment of the signature must include the same identification of *the written words* as necessarily exists when the witnesses see the testator write." In this case, the declaration was: "This is my will; I want you to witness it;" and, after the witnesses had signed it, the testator said: "I declare this to be my last will and testament." Here the will was folded, but was partly opened by one of the witnesses, so that he probably saw the signature. The other did not see the signature; and Judge LEARNED says: "No act was done which was more than the declaration that the instrument was his will." This exposition of the law is in accordance with the decision of the courts of this State since the adoption of the Revised Statutes. See Chaffee v. Bapt. Miss. Conv. (10 *Paige*, 85); Lewis v. Lewis (11 *N. Y.*, 220); Sisters of Charity v. Kelly (67 *N. Y.*, 409); Woolley v. Woolley (95 *N. Y.*, 231).

Baskin v. Baskin (36 *N. Y.*, 415), while declaring the law to be that the testator must verify the subscription of his name as authentic, would seem to be an authority that the production of the instrument, accompanied by the declaration that the paper was his last will, is an implied acknowledgment of his signature sufficient to meet the statutory require-

ments.   This view of the law is not sustained by subsequent decisions.   It is probable that the deceased intended to comply with the statute, and make a valid will, but that is not sufficient.   The formalities prescribed by the statute must all be observed.   He failed to acknowledge his subscription, previously made while not in the presence of the witnesses.

There is nothing in this case to warrant any supposition that the paper signed by the testator was a different one from that signed by the witnesses; nor is there anything to show that the deceased in any way identified the paper or signature as his will and signature.   He simply assented by a nod, without looking at it so as to recognize it, that the paper indicated by Denniston was his will.   The statute is too explicit to be satisfied with such an implied acknowledgment, and, in the words of Judge ALLEN (in Lewis v. Lewis, *supra*), " although it may operate with apparent harshness in this case, it is a beneficent and wise statute, and the public interest will be best subserved by a strict adherence to its provisions."

A decree will, therefore, be entered, refusing to admit the will to probate.