MARY G. JONES, RESPONDENT, v. MORGAN JONES AND ANN JONES, HIS WIFE, APPELLANTS.

*What proof of the publication of a will will justify the submission of the question to the jury — no formal statement is necessary.*

Mr. Finigan, having been informed by one Sheridan that Mr. John Jones wished to have him draw his will, called upon Jones and it was agreed that the will should be drawn and executed at seven o'clock in the evening of that day, at which time the witnesses were to be present. On that evening Finigan, Jones, Furlong and Sheridan met, and the will was then drawn from instructions given by Jones and in his presence, and read to him by Finigan. He said it was correct, but would rather have Sheridan read it over to him, which Sheridan then did carefully and slowly. Jones then signed the will, and Finigan said " I will sign it as a witness, and then Mr. Sheridan," to which he answered, "All right ; " and when Farley signed it he said, " Put your residence there ; don't forget that."

*Held*, in an action of ejectment involving the validity of the defendants' title, acquired under such will, that the court erred in refusing to admit the will in evidence, upon the ground that there was not sufficient evidence of its due execution; that the question as to its due execution should have been submitted to the jury.

APPEAL from an order denying a motion for a new trial, made on the minutes, and a motion for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict rendered in favor of the plaintiff.

*Jacob F. Miller*, for the appellants.

*John E. Parsons* and *D. B. Ogden*, for the respondent.

BRADY, J.:

The plaintiff sought in this action to obtain possession of one-ninth of the property described in the complaint, her claim resting upon the allegation that she was one of the heirs-at-law of John Jones, who died seized of the premises.

The defendant Morgan Jones averred his ownership of the estate under and by virtue of three deeds duly executed and acknowledged by his brother, John Jones, and by which it was conveyed to him. The plaintiff assailed the vitality of these instruments, by evidence tending to establish their invalidity, by reason of the mental inca-

pacity of the grantor when they were made. The defendant Morgan Jones essayed to establish his title to the premises also by the will of his brother, which was offered in evidence, but rejected on the ground that there was "not sufficient evidence of due execution." The jury having the issue as to mental capacity then before them, only as to the deeds, found for the plaintiff generally. The defendants moved for a new trial on the minutes and the exceptions taken by them, which motion was denied, and the exceptions, by the order entered upon the decision of that motion, were ordered to be heard in the first instance at the General Term.

The learned justice, in declaring the result of his deliberation, said that it was a matter of great doubt whether there was sufficient evidence on the part of the plaintiff to go to the jury, but that as there were one or two pieces of evidence properly presentable to them the verdict might not be disturbed and he, therefore, ordered the exceptions to be heard as stated. Nothing was said upon the value of the exceptions, or any one of them, the learned justice having mainly, it would seem, considered the motion in relation to the weight of evidence. The will was an important element in the defendant's case for the reason not only that it gave the defendant Morgan Jones the property in controversy, but in effect confirmed the previous transfers which the plaintiff sought to destroy, and if it were improperly treated as a part of the defendant's case a new trial must follow.

A careful examination of the evidence bearing upon its execution and publication results in the conviction that the question at issue on that subject should at least have been submitted to the jury. It was drawn by Mr. Finigan, a lawyer. He was advised that John Jones wished his will drawn, and he went to see him. At that interview, which took place in the afternoon, it was agreed that the will should be drawn and executed in the evening, and they were to meet at seven o'clock with the witnesses necessary for that purpose. Mr. Jones suggested Mr. Furlong, who was then present, as one of them. In the evening Messrs. Finigan, Furlong, Sheridan and Jones met as contemplated. The will was then drawn from the instructions given by Jones, and in his presence, and read to him by Mr. Finigan. He said it was correct, but would rather have Mr. Sheridan read it over to him, which Mr. Sheridan then

did, carefully and slowly; Mr. Sheridan, it must be borne in mind, also, was the person who went to Mr. Finigan, at the request of Mr. Jones, to get him to draw the will. He then signed it, and Mr. Finigan said to him: "I will sign it as a witness, and then Mr. Sheridan," to which he responded: "All right;" and when Mr. Furlong signed it he said: "Put your residence down there; don't forget that." The meeting arranged for the evening was in reference to the presence of the necessary witnesses chiefly, it would seem; and the evidence is not disputable as showing, or at least tending to show, that they knew not only what the paper was, but that they assembled to witness its execution, and that it was declared by the testator to be all right, he suggesting as a part of the necessary formula, to Furlong, that his residence should be added. No other conclusion can be reasonably entertained from these facts and circumstances than that the testator sufficiently declared the will to be his, and requested the witnesses to attest it. Two of them, Sheridan and Finigan, by instructions from him, knew what was to be done in the evening, namely, his will drawn; and it was so drawn, in the presence of these witnesses, read twice to the testator, declared to be all right, and then signed by him and the witnesses. The attestation clause was full and complete.

In *Woolley* v. *Woolley et al.* (95 N. Y., 231), cited on behalf of the plaintiff, witnesses did not see the testatrix sign the paper, did not know it was a codicil and there was no acknowledgment of it as such. It was signed as a paper purporting something the witnesses knew not what, and it was expressly said, as one of the reasons controlling the judgment pronounced, that there was no proof that the testatrix acknowledged her signature to the witnesses, and that there was nothing from which it could be properly inferred that she did so. Here, as will have been perceived, the will was signed in the presence of witnesses, who knew what it was, after it had been read over twice to the testator, once by each of two witnesses, and declared by him to be all right.

*In the Matter of the Will of Cottrell* (95 N. Y., 335), many of the cases bearing upon this subject were considered, and it was said that the precise force which should be accorded a full attestation clause regularly authenticated, was not clearly defined in the cases, but that they all agreed in the conclusion that it was entitled to

great weight in the determination of the question of fact involved. And further, that such a clause duly signed and corroborated by circumstances surrounding the execution, has been held sufficient to establish a will signed by the testator, even against the positive evidence of the attesting witnesses to the contrary. Indeed it had been previously held that a will duly attested upon its face, the signatures to which were genuine, might be admitted to probate, although none of the subscribing witnesses were able to swear, from recollection, that the formalities of the statute were complied with, and even although some of them should swear positively that they were not, if the other evidence warranted the inference that they were. (*Orser* v. *Orser*, 24 N. Y., 52.)

In *Mitchell* v. *Mitchell* (16 Hun, 97, and affirmed in 77 N. Y., 596), to which reference is made in *Woolley* v. *Woolley* (*supra*), the deceased produced a paper and said : " This is my will, and I want you to sign it," and the witness complied with the request ; whereupon he took it, after saying, " I declare this to be my last will and testament," delivered it to one of the witnesses for safe keeping ; but there was no acknowledgement that what purported to be his signature was in fact made by him, which was held to be necessary, and was quite distinct from his declaration of the nature of the instrument. It differs, therefore, from the case in hand, for the testator signed his will in the presence of the witnesses. ( *Willis* v. *Mott*, 36 N. Y., 486.) The decision of this court in the *Matter of Beckett* (35 Hun, 447) seems, however, to be controlling in favor of the defendants. It was there said that no formal declaration of the paper, executed as the last will and testament, was necessary ; no form of words was essential. It was only required that the witnesses should be given to understand, by words or acts of the decedent, that the proposed paper was intended as a will. And that case, in its facts, is no stronger on the subject than this.

The doctrine of *Remsen* v. *Brinckerhoff* (26 Wend., 325, 332), approved in *Gilbert* v. *Knox* (52 N. Y., 125), was referred to, in which the chief justice said : " I agree that no form of words will be necessary ; that the legislature only meant there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will."

It is not deemed necessary to pursue this subject further. It is quite apparent, for reasons already assigned, that the question as to due execcution, if any doubt were created, should have been submitted to the jury, and it was error, therefore, to exclude it.

For these reasons the judgment must be reversed and a new trial ordered, with costs to the defendants to abide the event.

DANIELS, P. J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.