In the Matter of the Probate of the Will of ARTHUR M. FELSON, Deceased.

Supreme Court, Trial Term, Schenectady County, December 15, 1954.

*William W. Wemple* and *Thomas A. Pritchard* for Jeanette Y. Felson, as coexecutrix of Arthur M. Felson, deceased, proponent.

*Morris M. Cohn* for William E. Felson, as coexecutor of Arthur M. Felson, deceased, and another.

*Leo W. Spira* for Martin Felson, contestant.

*William W. Wemple, Morris M. Cohn* and *Charles G. Fryer,* in person, for Charles G. Fryer, as temporary administrator of the estate of Arthur M. Felson, deceased.

HUGHES, J. Proceedings for the probate of the will were instituted before Honorable WILLIAM W. CAMPBELL, Surrogate of Schenectady County. Witnesses were sworn on behalf of the proponent and cross-examined by the objector. At the close of the matter, the Surrogate ordered a trial of the issues involved to be held in the Supreme Court. A stipulation was entered into and the matter was submitted for determination by this court.

The decedent, Arthur M. Felson, died October 27, 1953, at the age of eighty-three years, a resident of the city and county of Schenectady, State of New York. Prior to his death, he

executed two forms commonly used in the execution of a will, with the dispositive provisions typewritten in by the decedent. They were executed in duplicate on October 22, 1951, and offered for probate by the proponent, Jeanette Young Felson, a daughter of the decedent.

The usual objections were filed as to subscription, acknowledgment, witnesses, soundness and testamentary disposition of mind and memory, freedom from restraint and whether or not the execution of the two wills offered was caused or procured by fraud, deceit or undue influence.

The questions to be determined by this court from the evidence in accordance with the order entered in Surrogate's court were the following:

1. Did Arthur M. Felson, the testator, subscribe the paper offered for probate at the end thereof in the presence of the attesting witnesses or acknowledge to each of them that such subscription appearing on said paper had been made by him?

2. At the time of making such subscription or acknowledgment did the said Arthur M. Felson declare to the attesting witnesses that the paper offered for probate was his last will and testament?

3. Were there at least two attesting witnesses each of whom subscribed his or her name at the end of said paper at the request of said Arthur M. Felson?

4. At the time of the execution of the paper offered for probate, was the said Arthur M. Felson of sound and disposing mind and memory?

5. At the time of the execution of said paper, was the said Arthur M. Felson free from restraint?

6. Was the execution of the said paper by said Arthur M. Felson caused or procured by fraud, deceit or undue influence of the proponent or any other person or persons?

The parties hereto have stipulated that question No. 4 shall be answered " Yes "; that question No. 5 shall be answered " Yes "; and that question No. 6 shall be answered " No ". The remaining questions Nos. 1, 2, and 3 are for determination of this court alone without a jury. The stipulation before this court further provides that the questions to be determined are confined to the due execution of the will under section 21 of the Decedent Estate Law, and any other section or statute applicable thereto.

It was further stipulated that the signature of the testator and that of the two witnesses appearing on the printed form

of will are genuine. The witnesses to the will were Katherine Ryan and Helen S. Buerger. The former died about April, 1954, and the latter testified before the Surrogate.

From the testimony given on the probate proceeding this court will first determine whether Arthur M. Felson, the testator, subscribed the paper offered for probate at the end thereof in the presence of the attesting witnesses, and whether the attesting witnesses signed at the request of the testator. If these questions are answered in the affirmative, subdivisions 1, 2 and 4 of section 21 of the Decedent Estate Law have been complied with, and questions Nos. 1 and 3 certified for this court must be answered in the affirmative.

The testimony taken before the Surrogate, and made a part of the record by stipulation reveals that Katherine Ryan and Helen S. Buerger were long-time employees of a local insurance agency, and that Arthur M. Felson had come into the business establishment numerous times throughout the course of his life to have documents witnessed. On this particular occasion, October 22, 1951, Arthur M. Felson entered the establishment with two printed forms of will executed by himself upon a typewriter. The testimony reveals the following:

Page 4: (Direct examination) " Q. Did you see Mr. Felson sign both exhibits? A. Yes."

Page 7: (On cross-examination) " Q. Did you sign your signature at the same time that Miss Ryan signed her signature? A. I did. Q. Were you in the presence of Miss Ryan at the time you signed? A. I was. Q. Was she in your presence at the time? A. She was."

Page 9: " Q. All you know is that he requested you to sign? A. That is right."

Page 15: (On re-cross-examination) " Q. Did he sign both of these papers at the same time they have been introduced as Proponent's Exhibits 1 and 1-B.? A. Yes Sir."

From this testimony it may be concluded that the testator signed the two will forms in the presence of the two witnesses and also requested them to sign. An inspection of the exhibit shows that Arthur M. Felson subscribed his name to the end of the will. There is no serious question raised as to these points in the objector's brief, and they may be disposed of by answering questions Nos. 1 and 3 in the affirmative.

The statutory question of publication is the remaining question to be determined. Subdivision 3 of section 21 requires that the testator shall declare the instrument to be his last will

and testament. Though counsel and the court have not found a case exactly in point, the law reports abound in decisions as to the question of publication.

A review of the authorities shows that the courts are unwilling to prescribe a general rule for cases of this nature. The term "substantial compliance" is used, and what is substantial compliance depends upon each individual case reasoned to its own conclusion as to whether section 21 of the Decedent Estate Law has been complied with. (See *Gilbert* v. *Knox,* 52 N. Y. 125, and *Matter of Beckett,* 103 N. Y. 167.) It is also stated that section 21 of the Decedent Estate Law is designed to prevent fraud and to tend toward guaranty of the genuineness of the testamentary disposition and is to be enforced with absolute strictness. (See *Matter of Douglas,* 193 Misc. 623, and *Matter of Turell,* 166 N. Y. 330.)

Evidence bearing on the question whether the testator communicated to the witnesses the nature of the documents (referred to herein as will forms) is here briefly summarized as follows:

Mrs. Buerger testified on direct examination as follows:

Page 4: " Q. In the attestation clause, the clause immediately preceding your signature, there is a date written in as 22nd of October, 1951, in whose handwriting is that? A. That is my handwriting."

Page 6: (Cross-examination) " Q. Do you recall whether or not Mr. Felson told you that that was a will? A. I cannot be sure about it, I must have read it, I cannot be sure about it."

Page 9: " Q. All you do know is he requested you to sign? A. That is right. Q. That is all you can testify to. A. That is right. Q. What the instrument was upon which Mr. Felson appended his signature and you appended your signature and Miss Ryan appended hers? You do not know? A. I do not know, except, as I say, I filled in the date and so must have read what I was filling in. Q. Did he make a declaration that it was his will? A. I have not the slightest idea."

Page 14: (Redirect examination) " Q. In that same clause which contains the date, it contains in bold type I noticed upon this exhibit ' WILL AND TESTAMENT '. A. Yes Sir."

Being recalled, Helen S. Buerger testified on direct examination: Page 30: " Q. Now proponent's Exhibit 1 and 1-B, will you kindly look at them; prior to the time that you signed your name to these exhibits, did you read the attestation clause which immediately precedes your signature? A. Yes."

The attestation clause reads as follows (Italicized portions are those filled in by the witness, Helen S. Buerger): " We,

whose names are hereto subscribed, DO CERTIFY that on the *22nd* day of *October,* 1951 the testat... above named subscribed *his* name to this instrument in our presence and in the presence of each of us, and at the same time, in our presence and hearing, declared the same to be *his* Last Will and Testament, and requested us, and each of us, to sign our names thereto as witnesses to the execution thereof, which we hereby do in the presence of the testat... and of each other, on the day of the date of the said Will, and write opposite our names our respective places of residence.''

The testimony further revealed that Arthur M. Felson had on many occasions entered the Van Voast Agency for the purpose of having his signature witnessed, that he was well acquainted with the witness and was a man in business and that he was the author of the will. The will was placed in a safety deposit box where it remained until it was brought before the Surrogate's Court.

The attestation clause and the surrounding circumstances of execution as described by the only surviving witness are the controlling factors in arriving at a decision in this case. The law reports abound in decisions as to the effect of an attestation clause where witnesses cannot remember and also where they testify against the execution of a will.

The cases cited by the objector are those where the witnesses have positively testified that the statutory requisites were not met. In *Woolley* v. *Woolley* (95 N. Y. 231) the witnesses testified positively within a year after the execution of the instrument that the will was not published nor did they see it signed. The court denied probate, and went on to say (p. 236): '' It is not denied that a will may be proved, even against the evidence of the subscribing witnesses, by other sufficient evidence, and that the due execution of a will may be inferred from a regular attestation clause, and all the surrounding circumstances tending to show due execution.''

Another case cited by the objector is *Lewis* v. *Lewis* (11 N. Y. 220) where one witness positively stated that there was no publication nor did she see the signature of the alleged testatrix. The remaining witness merely recalled signing the paper on a different occasion. The court said (p. 224): '' It cannot however be presumed in opposition to positive testimony, merely upon the ground that the attestation clause is in due form and states that all things were done which are required to be done to make the instrument valid as a will.''

A case very similar to the one at hand is *Matter of Pepoon* (91 N. Y. 255). In that case, two witnesses to the will testified before the Surrogate. In substance the testimony of both witnesses is stated by the witness Mr. Bronson. On page 259 it reads: " ' I am sure that before signing my name as a witness, I read the attestation clause; I should say that I state that from recollection; I know that to be my signature, and I must have read it before I signed it; I do not think that is all inference; I mean to state now that I now recollect that I did read that, or that there was read to me that clause.' "

The surviving witness to the will of Arthur M. Felson was unable to recall everything that occurred at the time of the execution of the will. This failure to recollect may be explained by the very fact that she was and is the secretary and treasurer of a very busy insurance agency where people call upon her to sign and acknowledge numerous instruments throughout the course of a year.

This court believes that every presumption is in favor of the due execution of the will in question. The evidence shows in addition to the proof the genuineness of the signature and full attestation clause. This attestation clause was competent evidence under the common law of the recitals contained within it and it is also such evidence as could be received upon the trial of an action the same as any other memoranda or book entry simultaneously made. Section 142 of the Surrogate's Court Act provides in part: " the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

The Surrogate's Court Act provides for the method of proof on the probate of a will and goes on further to state that common-law proof is also admissible to prove a will.

If both of the witnesses were dead, the will could be proven by the genuineness of the signatures of the witnesses and the testator. Here we have more, a living witness who can recollect, or can substantially remember everything about the execution of the will. The mere fact that she, in her own mind, fails to recall whether there was a publication of the will in question, does not establish the fact of no publication. It is a well-established rule that, when there is a failure of recollection by the subscribing witnesses, the probate of the will will not be defeated if the attestation clause and the surrounding circumstances

satisfactorily establish its execution. (*Rugg* v. *Rugg,* 83 N. Y. 592; *Matter of Kellum,* 52 N. Y. 517.)

Under the circumstances, and the evidence before this court, the will in question was sufficiently proved. The court in the *Matter of Pepoon* (91 N. Y. 255, 260, *supra*) stated: " Within this rule it is difficult to see why the will in question was not sufficiently proved. Although the witnesses may not have established a case strictly within the requirements of the law, yet their testimony strongly tended to sustain the validity of the execution of the will, and the attestation clause being perfect it is not apparent how it can properly be claimed that the will was not sufficiently proved. If the witnesses had been dead it could have been proved according to the provisions of the statutes of this State. The proof given established a stronger case than could have been made out if the witnesses were not living. Under such circumstances it would be going very far to hold that the will was not lawfully proved, and no reported cases would uphold such a decision."

As to the contention that there was no evidence of publication, the answer must be that the attestation clause itself is some evidence of the facts recited in it. In *Matter of Pepoon* (*supra,* p. 260) the court after discussing the question of no possible recollection on the part of the witnesses stated: " But even if such was the case, we think that within the rule which we have stated the probate of the will should not be defeated, as the surrounding circumstances all tend to show its valid execution; the will was signed by the testatrix and by the subscribing witnesses, and was evidently intended as a legal and valid declaration of the intention of the testatrix. It was prepared with a proper attestation clause and executed for the purpose of disposing· her estate, and hence, is brought within the principle decided in *Rugg* v. *Rugg* (*supra*)."

Under the facts and circumstances in this case, it cannot be assumed from the evidence that the will executed by the testator and attested to by the witnesses with a proper attestation clause that there was no publication. The proof in the case established it to the contrary. There is no positive evidence from which can be drawn a justifiable inference that at the time of the execution of the will, the witnesses were not aware that they were signing the acknowledged will of the testator.

The will in question is reputed to have been typewritten by the testator. Though not strictly a holographic will within the meaning of that term, the law applicable to such a will may also

be said to apply here since it was executed by his own hand and control. In *Matter of Turell* (166 N. Y. 330) the court said (p. 336): "It is, undoubtedly, true, in the case of a holographic will, that the dangers of fraud and imposition, or of undue influence, against which the statute was designed as a safeguard, are greatly diminished and that it is unnecessary to criticise as closely the terms and manner of publication. The atmosphere of a testamentary instrument, wholly in the handwriting of the testator, is such as, naturally, to dispose the judicial mind to accept it as his will with less strictness in the proof of a compliance with statutory formalities. In all cases, a substantial compliance will be sufficient and no particular form of words is required, or is necessary, to effect publication. (*Matter of Hunt*, 110 N. Y. 278; *Matter of Beckett*, 103 ib. 167); but some compliance must be proved."

In *Matter of Hunt* (110 N. Y. 278) the recollection of the two witnesses as to the transaction was imperfect; but each testified, however, in substance, that the circumstances must have been as stated in the attestation clause or they would have not signed. The court stated (p. 281): "The only supposed doubt as to the matter is cast by the inability of the witnesses to recollect precisely what took place, in detail. We think that it is a sufficient compliance with the statutory requirement if, in some way or mode, the testator indicates that the instrument the witnesses are requested to subscribe as such, is intended and understood by him to be his executed will. In probate cases the courts look to the substance of the transaction and see that there was no opportunity for imposition of fraud."

The court went on to say (p. 282): "The attestation clause here is entirely consistent with the execution of the paper by testator in the presence of the witnesses; and nothing in the circumstances of this case pointing to any fraud or undue influence, and none being charged, we think the presumption should prevail that all formalities have been observed; and we, therefore, are disposed to sustain, rather than to reject this testament; for we feel satisfied that it was duly executed and published."

This court adopts the statement of that case here.

A case very much in point here is *Matter of Sizer* (129 App. Div. 7, affd. 195 N. Y. 528). In that case the first and second witness had no recollection of signing the will, or of anything connected with it, but acknowledged their signatures to be genuine. The third witness testified in effect that he signed the paper; that he did not know what the paper was, and that the

testator did not say. The signature of the testator was proved. The court recited the provisions of the statute relative to establishing a will when witnesses are dead, absent, or have forgotten occurrence or testify against the will. (Now Surrogate's Ct. Act, § 142.)

On page nine of the opinion, the court concluded from the above evidence: " In the present case, therefore, the surrogate was permitted, the recollection of the subscribing witnesses failing, to resort to such other evidence as is receivable in an action. He had before him a full attestation clause, and proof of the signatures of the testator and the subscribing witnesses. Was this alone evidence of the execution of the will with the formalities required by law? It was."

And further, on the next page: " Though the cases are few in this state where the court was called upon to say and did say that the attestation clause with proof of the signatures was alone evidence of formal execution, or made out a *prima facie* case, an analysis of all cases in this state will show that rule to be generally recognized; and there is abundance of authority for it elsewhere, in England and in our states."

From a review of the authorities and the evidence in this case, the attestation clause, with proof of the signatures, a failure of recollection on the part of the surviving witness, and no evidence to overcome the due execution of the will, this court makes the following finding of fact:

That the weight and preponderance of the evidence show that at the time that the testator Arthur M. Felson subscribed or acknowledged his will the said Arthur M. Felson did declare to the attesting witnesses that the paper offered for probate was his last will and testament. The remaining question No. 2 is therefore answered in the affirmative.

The instrument propounded for probate and dated October 22, 1951, and designated as exhibits 1 and 1-B, should be admitted to probate as the last will and testament of Arthur M. Felson, and as valid to pass real and personal property and letters testamentary should be issued to William E. Felson and Jeanette Young Felson, when they qualify thereunder. Let a decree be made and entered accordingly.