**ECEDRO RABSATT and PAUL SCHACK, II, Appellants**

**v.**

**ESTATE OF MARGARITA ZIRI SAVAIN, Appellee**

D.C. Civ. App. Nos. 93-67 & 93-81

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 10, 1995

KWAME O. MOTILEWA, ESQ., (MOTILEWA & PERCELL), St. Thomas, U.S.V.I. *for Rabsatt, Appellant*

VINCENT A. FULLER, ESQ., St. Thomas, U.S.V.I. *for Shack, Appellant*

Andrew L. Capdeville, Esq., St. Thomas, U.S.V.I. *for Appellee*

FINCH, *Judge* of the District Court of the Virgin Islands; GILES, *Judge* of the Eastern District of Pennsylvania, Sitting By Designation, and ANDREWS, *Judge* of the Territorial Court of the Virgin Islands, St. Croix Division, Virgin Islands, Sitting by Designation.

On Appeal from the
Territorial Court of the Virgin Islands

## OPINION OF THE COURT

Both Eldro Rabsatt and Paul Shack, II ("appellants") in this consolidated appeal challenge the Territorial Court's rejection of two independent instruments executed by the deceased Margarita Ziri Savain, each purporting to be her Last Will and Testaments pursuant to V.I. Code Ann. tit 15, § 13. For the reasons stated herein, we affirm the trial court's decision.

## FACTS

On February 24, 1981, Ms. Savain ("Savain"), now deceased, executed a trust instrument, which she amended on October 7, 1983, the same day that she executed her Last Will and Testament ("Will #1"). According to the trust and Will #1, Savain maintained a life interest in all her property, and left her assets, upon her death, to her brother, should he survive her. If her brother should predecease her, which he did, all assets were to be passed to Ruth Robson as sole heir and beneficiary.

On May 8, 1992, while in the hospital and on medication,[1] Savain executed a second instrument purporting to be her Last Will and Testament ("Will #2"). In Will #2, Savain bequeathed and devised all her property to her "good friend" and tenant, appellant John Shack. Will #2 was prepared by an attorney contacted by appellant Shack on May 8th, who, prior to that occasion, had not known

---

[1] Savain was admitted into the hospital earlier that month with several infirmities and apparently dying. Among other medicines, she was taking demerol, a narcotic pain-killer. The parties produced conflicting testimony regarding the state of Savain's mind while on the medication.

Savain. Appellant Shack's employer and a hospital nurse executed Will #2 as attesting witnesses.

Again, on May 12, 1992, appellant executed a third instrument purporting to be her Last Will and Testament ("Will #3"). Appellant Ecedro Rabsatt, long time close friend of Savain, was named as sole beneficiary in Will #3. Will #3 was prepared by a lay person who previously worked as a legal secretary. Savain met with the lay person several weeks before Savain's admittance into the hospital to outline the provisions that Savain wanted in her will. Attesting witnesses to Savain's execution of Will #3 were a long time friend of Savain's who was visiting her in the hospital and a cousin of appellant Rabsatt's who also knew Savain. Savain died on May 24, 1992.

This matter was heard on December 10, 1992 to determine whether any, none, or all of the wills complied with Virgin Islands law. In a twenty page Memorandum Opinion dated March 5, 1993, the territorial judge concluded that Will #2 and Will #3 were defectively executed because they were not "published by the testator or testatrix in the presence of each of the two attesting witnesses, or acknowledged to each by the maker thereof ... [and] each of the attesting witnesses [did not sign] at the request made to each of such witnesses by the testator or testatrix." These two (consolidated) appeals ensued.

## DISCUSSION

Appellants challenge the trial court's findings that both Will #2 and Will #3 were fatally defective. This Court reviews the lower court's finding that appellants' wills were fatally defective pursuant to Virgin Islands law under two standards: the legal component is subject to plenary review; and the factual component is subject to review under the clearly erroneous standard. Rain Constr. Co., Inc. v. American States Ins. Co., 749 F.2d 1049, 1053 (3d Cir. 1984). Findings of fact are reviewed under a clearly erroneous standard, but due regard is given to the trial court judge's opportunity to judge witness credibility, crucial in this case due to conflicting testimony. Sheet Metal Workers Int'l Ass'n, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991). This Court is not authorized to substitute its findings for that of the trial court,

but may only assess whether there was enough evidence on the record to support such findings. Cooper v. Tard, 855 F.2d 125, 126 (3d Cir. 1988).

V.I. Code Ann. tit, 15, § 13, entitled 'Manner of execution of will' states;

> Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:
>
> (1) It shall be subscribed by the testator at the end of the will.
>
> (2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.
>
> *(3) The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.*
>
> *(4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.* (emphasis added).

This provision was adopted from New York Decedent Estate Law, § 21. Thus, this Court is guided in part by the development of New York decedent estate law. This appeal centers on the fulfillment of subsections (3) and (4). Because failure to comply with these two requirements renders a will invalid for probate purposes, we examine the details surrounding execution of Will #2 and Will #3.

## Will #2

Will #2 was signed by two attesting witnesses, Ms. Melisano and Mr. Huskey. The drafter, an attorney, also testified at trial. As is within its discretion, the trial court considered the conflicting testimony of each and their relative interests at stake in assessing their credibility. Melisano, a nurse-on-duty who was directed to act as witness by her supervisor, was deemed the most credible witness, having had no non-professional contact with Savain. Melisano testified that upon entering Savain's room, appellant Shack, Huskey and the attorney were already present. She asked if

240

they had read the will to Savain and they responded that they had. The will was not read aloud or by Melisano while she was there, nor did Savain say anything about the documents. Melisano watched Savain sign the documents and signed herself at the request of the attorney.[2] Conversation at the time centered not around the will, but instead about Savain's return to her home and acquisition of food.[3]

■ Although both witnesses were present at the time Savain executed her will, Savain never declared that the instrument was her last will and testament. In addition, the two attesting witnesses signed the document at the request of appellant Shack and the attorney, not at the request of the testator. Thus, neither subsections (3) and (4) of section 13 were technically satisfied.

## Will #3

■ The trial court's memorandum opinion reflects the events leading up to the execution of Will #3. The two attesting witnesses, Alvin Canton and Randolph Thomas, had enjoyed long-time relationships with appellant Rabsatt.[4] The two, however, along with the drafter, Rita James, offered conflicting testimony regarding the circumstances of the signing of the Will #3. Supp. App. at

---

[2] Mr. Huskey, the second witness, was appellant Shack's employer and the attorney's client. He stated that both witnesses were present when the attorney read the will to Savain. Mr. Huskey testified that he had no conversation with Savain "person-to-person" about the will. Appellee's Supplemental Appendix ("Supp. App.") at 43.

    The attorney testified that he prepared the will at the direct request of appellant Shack on behalf of Savain the same day that he brought it to the hospital for execution, having never met Savain before that occasion. Id. at 55 (stating that Huskey referred Shack to him). The attorney also stated that he conducted a formal ceremony with appellant Shack, the two witnesses, and Savain all present. Id. at 66-76 (but offering conflicting testimony as to whether Melisano was present at the reading of the will). Shack paid the attorney for his services.

[3] Supp. App. at 22-28. Melisano stated that the attest clause of the will "says I knew she was signing her Will, but I signed it, but I have to say, I did not know she was signing her Will." Id. at 30.

[4] Canton describes his relationship with appellant Rabsatt as "as close as brothers and I even tell people, you know, that's the kind of relationship we had. I know him that long." Supp. App. at 104. Canton knew Savain since the mid-60's, and was given power of attorney for Savain in April, 1992. Canton lived with Rita James, the drafter of the Will #3, as common-law husband. Ms. James was not paid for her services. Thomas knew Rabsatt, his third cousin, all his life. Id. at 140-41. Thomas stated he knew Savain since Rabsatt and he had built her home 15-20 years ago.

105-176. The trial judge awarded considerable deference to Thomas' testimony, due in part to his unbiased appearance. Mr. Thomas stated that Rabsatt, not Savain, asked him to sign the will as attesting witness. He also stated that Savain never discussed the fact that the document was her last will.[5] Based on the conflicting testimony and the weight of credibility given to the witnesses, the record does not show compliance with 15 V.I.C. § 13, §§ (3) and (4).

## THE NECESSITY OF STRICT COMPLIANCE

■ Courts require strict observance of execution formalities to protect the integrity of wills. Rarely are exceptions permitted. The reason for such strict compliance is the courts' interest in guaranteeing the genuineness of the testamentary disposition and in preventing execution by mental incompetents or as a result of undue influence or fraud.[6] Although no such concerns were discussed in the lower court's opinion, the record reveals that Savain was drugged and on her deathbed, with three conflicting and allegedly enforceable testamentary documents, two of which were executed with weeks of her death while she was at the hospital. As such, we take a cautious approach in analyzing the wills, and consider the degree of contradiction between the witnesses who observed the incidents of execution.[7]

■ In this instance, three different conflicting versions were presented to the trial court, all allegedly outlining the last wishes of the decedent Savain. Even though, on their faces, the testamentary documents appear valid, the trial court acted appropriately by examining the documents' compliance with the statutory requirements.[8]

---

[5] *Id.* at 150. Ms. James stated that Savain "asked [Thomas] if he came to sign the Will." *Id.* at 162.

[6] See In re Inglis' Will, 3 Misc. 2d 980, 156 N.Y.S.2d 731 (Surr. Ct. 1956); In re Boyle's Will, 208 Misc. 942, 145 N.Y.S.2d 386 (Surr. Ct. 1955); In re Felson's Will, 206 Misc. 988, 135 N.Y.S.2d 737 (N.Y. App. Div. 1954).

[7] See *id.* (so holding in a case where the will was typed by the testator and the witness could not remember the details of the signing).

[8] Introduction of testamentary documents that appear, on their face, to comply with statutory requirements, simply carry a presumption of validity. Because neither

242

■ Publication, referred to in subsections (2) and (3) of Section 13, requires "not only that the testator have knowledge of the character of the instrument, but equally important, that he share that knowledge with his witnesses."[9] Basically, the testatrix must state, in front of the witnesses, that she understands that she is executing her last will and testament. The testatrix must also ask the witnesses to execute the will, thus representing that the testatrix knows what she is signing. Although use of exact words are not always necessary, and actions are evaluated as well as words, most courts construing these requirements analogize it to a 'meeting of minds' between testatrix and witnesses.

Employing the Pulvermacher standard to analyze whether publication occurred,[10] we find that neither subsections (3) nor (4) of Section 13 were fulfilled when Savain executed Will #2, since we are not confident that a 'meeting of minds' occurred. Even if the attestation clause appears on its face to be valid, it is insufficient "when it appear that the essential elements in the due execution of the will are absent."[11] Similarly, in construing Will #3, the two attesting witnesses, Alvin Canton and Randolph Thomas, who were both long-time friends of the beneficiary, appellant Rabsatt, produced significantly conflicting testimony regarding the crucial elements of due execution. Mr. Thomas denied that Savain told him that the document was a will or asked him to sign the will as attesting witness; he contended that he performed this task as at the request of appellant Rabsatt.

Because we must endorse a strict approach to the publication requirements of due execution to maintain the integrity of the testamentary disposition, and due deference must be given to the trial judge's unique position to judge the credibility of the wit-

appellant attacked the validity of Will #1, our discussion is limited to Will #2 and Will #3.

[9] Matter of Pulvermacher, 305 N.Y. 378, 113 N.E.2d 525 (N.Y. 1953) (quoted in the trial court's opinion and a case cited by all three parties analyzing the validity of a holographic will). Strict requirements are sometimes relaxed slightly for holographic wills.

[10] This appears to be the majority view construing the New York law which this jurisdiction adopted.

[11] Matter of Turell, 166 N.Y. 330, 337, 59 N.E. 910, 911 (N.Y. 1901) (quoted in Matter of Pulvermacher, 305 N.Y.S. at 393).

nesses, we find no error in the trial court's conclusion that Will #2 and Will #3 were not duly executed.

## CONCLUSION

We hold that the requirements of 15 V.I.C. § 13, entitled 'Manner of execution of will' must be strictly construed. Because appellant Rabsatt and appellant Savain failed to adhere to the requirements of subsections (3) and (4), we find no error in the trial court's decision to reject the two instruments, each purporting to be Savain's Last Will and Testament, dated May 8 and 12, 1992. Accordingly, the Territorial Court's decision is affirmed. An appropriate order will be entered.

## ORDER OF THE COURT

AND NOW, this 10th day of February, 1995, after careful review of the record and having considered the submissions and arguments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's Opinion and Order dated March 5, 1993 is AFFIRMED.