In the Matter of the Probate of the Last Will and Testament of
CATHERINE SCHILLINGER, Deceased.

Surrogate's Court, Monroe County, October 21, 1929.

*Warren, Shuster, Case & Halsey* [*H. H. Halsey* of counsel], for the proponents.

*Bly & Bly* [*H. W. Ungerer* of counsel], for the contestants.

FEELY, S.  The only question submitted to the jury was whether the propounded writing was the free act and deed of the decedent. The verdict declared it was not such.  Thereupon this motion for a new trial was made both on the facts and on the law.

As to the first ground, that the verdict was against the "weight of the evidence," the fact that this specific question of freedom or force went to the jury, without objection, shows the proponent realized then the ultimate state of the proof was such that differing inferences might reasonably be drawn from the testimony, according to the manner in which it might appeal to the jury's sense of likelihood and truth.  This objection can only mean that the probabilities in favor of the writing being the aged lady's free act so greatly overweighed what might be said to support the adverse verdict, that it is clear the jury was mistaken, if not moved by passion, prejudice or some extraneous consideration.  No such marked contrast was presented.  Personally knowing Attorney J. R. Martin, the draftsman and one of the subscribing witnesses, as well as I do, and feeling, as I do, that the will rewarded those who should have been remembered for their service to the decedent — as the contestant's main witness, in part, at least, admitted in so far as she approved the giving of a third of the estate to Caroline Hetzer — I would have been slow in coming to the conclusion reached by the jury, if at all.  I must say, however, that if the jury believed all that was testified by contestant's main witness, Mrs. Amelia Danielson, and if they did not know and esteem Mr. Martin as I do, they had reason to find as they did, and to do so consistently with the outward appearance of regularity reflected by the testimony of both subscribing witnesses, for such is the outcome of moral coercion — somewhat like "the hand of Esau but the voice of Jacob," the motions of one under the will of another.  My understanding of my duty in such situation constrains me to allow the verdict to stand on the state of facts that went to the jury.

The second ground for a new trial is a suggestion of error in the charge as to the burden of proof.  The charge, in substance, repeated, in several forms and connections, the traditional instruction that the proponent could succeed only in case the jury found a fair, even though a slight, overweight of all the believable evidence to be in favor of the claim that this writing was the free act and deed of the decedent; and that if such over-

weight were found to be in favor of the contestants' contention that it was not, but was the product of moral force and undue influence, the verdict should be rendered for them; and also that if, upon the whole, there were found to be no overweight, but that the probabilities were evenly balanced in the composite mind of the jury, then the verdict should be also for the contestants, because the law places the risk of this latter situation on the proponents. To this charge proponent excepted, and during the course of requests for further or other instructions, the proponent also reserved for review the same point now in hand when he addressed the court as follows:

" Mr. Halsey: I ask your Honor to charge the Jury that the burden of proving undue influence is upon those that assert it.

" The Court: That is true, but that has been undertaken, and we have gone past that; and we are no longer concerned with it. It is more or less like a game of cards. First one side has the lead, then the other, and finally there is a reckoning, or figuring up of the score. When it came their lead, if I may so phrase it, they played it, and now an entirely different aspect comes into effect. It is a question now of whether more weight is in your favor, or otherwise. I decline, and distinctly refuse, to vary my charge.

" Mr. Halsey: Exception."

A confessedly obiter statement of opinion by the Court of Appeals, that can be superficially read to be contrary to part of the charge outlined above, is the basis of this exception. Postscripted to the opinion in *Matter of Kindberg* ([1912] 207 N. Y. 220, affg. 148 App. Div. 915), this dictum, by its extent and intricacy, has since occasioned some confusion. Former Surrogate FOWLER at first doubted this pronouncement could really have been meant to change established law (*Matter of Falabella*, 139 N. Y. Supp. 1003, 1005; *Matter of Gedney*, 142 id. 157, 167), but, at last, he settled down in the view that " while this rule * * * is being rapidly repudiated in many States, such is now the rule in this State in reference to both procedure and proof, or the weight of evidence, on an allegation of undue influence." (*Matter of Hermann*, 87 Misc. 476, 480, 503.)

In the face of this, I respectfully venture to say that a look into the state of affairs as to which this dictum was predicated has made clear to me that the *Kindberg* record did not call for an expression as to where the risk of jury balance should be placed. It is also clear to me that this collateral statement of opinion was directed to a point raised by the special guardian that the contestant, alleging undue influence, had not adduced testimony thereof sufficient to go to the jury. A second will had been drawn by this

testator's lawyer, who as residuary legatee therein would take the greater part of the estate. It was witnessed by the clerk in his law office, and the other witness was the husband of a legatee therein. This attorney propounded the will and conducted the appeals. Before the jury the proponent moved for direction of verdict. BISCHOFF, J., held the credibility of the clerk and of the legatee's husband was for the jury, especially as the latter did not testify to a direct request to the witnesses, but to movements of testator's head, which the jury might or might not have found to be an assent. On this part of the issue a verdict adverse to the will was sustained in all the courts. With those issues, the trial judge also allowed the question of undue influence to go to the jury. The special guardian in his brief before the Court of Appeals makes this sole point: " There is *no evidence* of undue influence. The only suggestion thereof springs from the alleged relation between [the attorney, draftsman and residuary legatee] and the decedent of attorney and client.

" Whatever additional burden of explanation was required of proponent by reason of this relationship was fully met, and it was *error to submit this issue to the jury.*"

Obviously, this was a question whether contestant had gotten by the trial judge in this one regard, not whether the proponent had gotten by jury balance.

The will had been set aside on grounds other than the special finding it had been procured by undue influence, and the Court of Appeals not only affirmed absolutely, but undertook to discuss an ineffective error committed in sending to the jury this issue of undue influence; and the chief judge wrote on as follows: " These views dispose of the case. It is not necessary to consider the rulings of the court on the other questions submitted to the jury. But there was an error in the charge of the trial court on the issue of undue influence, which we ought not let pass unnoticed, though the error cannot affect our decision. The court charged that the burden of proof upon the question of undue influence rested on the proponent of the second will."

The exact words used by the trial judge were these: " There must be affirmative evidence of the facts from which undue influence is to be inferred; but if those facts appear, then the burden of proof that there was no undue influence is upon the proponent." The special guardian's point, however, was that no such " affirmative evidence " had been adduced by the contestant to show undue influence, and this question should not have gone to the jury at all, The contestant seems to have been relying solely on proponent's own showing, in an endeavor to wrest some advantage from part

of the rule that fiduciary relation and resultant benefit "required explanation and   *   *   *   imposed on the proponent the burden of satisfying the court that the will was the free " act of the testator; but contestant in this attempt appears to have lost sight of the rest of the rule that those two facts — relationship and benefit — standing by themselves in the proponent's *prima facie* case, without the aid of other facts or circumstances, do not give rise to the presumption of undue influence.   (*Evans* v. *Trimble*, 88 Misc. 667, 672; David on Wills, § 72.)

CULLEN, Ch. J., seems to make the point that the contestant could not bear his own burden of testification merely by trying to climb up onto the shoulders of the proponent and ride through to the jury on the proponent's showing by claiming it did give rise to such presumption.   Having quoted the rule, Judge CULLEN continues: "This is a very different proposition from the statement that the burden of proof was on the proponent.   Undue influence is an affirmative assault on the validity of a will, and the burden of proof does not shift, but remains on the party who asserts its existence."   This I understand to mean here that the contestant must carry his own peculiar burden whenever it comes his turn to do so, and while it remains his unshiftable duty to bear it, in the production of testimony.   It was up to contestant, therefore, in order to go to the jury, to bring in some additional facts beside those of relationship and benefit already shown by proponent.   Here Judge CULLEN not only makes a statement that is correct in its own setting and context, wherein it is limited to the duty of adducing testimony in order to get to the jury, but he also goes on at once to lay down the correct rule to be applied in the jury room on the risk of jury doubt with which we are now concerned.   He was the first to bring into the discussion the word "preponderance," when he added:   "The learned judge fell into an error similar to that   *   *   *   under the rule of *res ipsa loquitur*," (where circumstances) "create a presumption of negligence which in the absence of an explanation will authorize a jury to render a verdict for the plaintiff.   Notwithstanding this, the burden of proof never shifts, but taking presumption and proof together, it still rests upon the plaintiff to satisfy the jury on the whole case by a preponderance of evidence that the defendant was guilty of the negligence charged."   In the case at bar the charge upon preponderance and balance was based upon the fundamental principle of law underlying that last statement of Judge CULLEN.

I can here make only this general reply to the cases cited by proponent, that my research has never resulted in finding a case, since the *Kindberg* case — before it, there were none — which lent

the least color to the claim that such instruction as was given in this charge on preponderance was erroneous. Whatever may be the wording of the opinions, the decisions will be found to be either that the contestant had not brought forward enough to go to the jury, or what did go to the jury was clear y so scanty, meagre and insufficient as to justify the court of review saying the verdict of undue influence was against the great overweight of all the evidence. This cannot be said to place on the contestant the risk of a balanced state of the proof in the mind of the jury as to an essential part of proponent's own case.

Repeated dealing with the request now in review has confirmed this court in the opinion that the *Kindberg* dictum was never intended to change the old rule on preponderance as to a fact that was one of the two essential parts of proponent's assertion, that the propounded writing was not only decedent's deed but also her free act.

An excellent survey of the place this dictum now has in our case law will be found in Mr. B. R. Davids' "New York Law of Wills" (§§ 224–226), under the title "Ultimate Burden — Proof Justifying Decision on Whole Case," which he summarizes as follows: "The question, then, is whether the Court of Appeals in the *Kindberg* case intended to overrule *Rollwagen* v. *Rollwagen* and reverse the principle that has so long been accepted as a canon of testamentary law. It is difficult to believe that this was the intention of the court; and until there is some further expression on the point, it seems to be safe to adhere to the rule that the obligation rests on the proponent to establish the fact of volition, or as was said in *Rollwagen* v. *Rollwagen*, ' to satisfy the court that the instrument speaks the language and contains the will of the testator.' Furthermore, the relation of the two issues, one to the other, would seem, so far as the vast majority of cases is concerned, to render impossible any distinction in respect of the party having the burden of proof. The issues are not distinct or separable " (p. 402). It seems to me, therefore, proponent's second ground was not well taken.

Enter an order denying this motion for a new trial on the merits, together with a decree on the special verdict denying probate of the propounded writing.