In the Matter of the Estate of JAMES A. BROWN, Deceased.

Surrogate's Court, Monroe County, May 9, 1932.

*John D. Lynn*, for the proponent.

*Albert C. Olp*, for the contestant.

FEELY, S.   When the issue herein was moved for trial, without jury, certain questions arose as to whether the recent ruling in the *Schillinger Case* (258 N. Y. 186, affg. 231 App. Div. 679, which revd. 135 Misc. 42) had any effect on other procedural matters in contested probate than the proper charge to a jury as to undue influence. The decision in the case cited concerned only the propriety of a charge to the jury on the " burden of proof," that was based on the authorities now grouped in *Miller* v. *Blumenshine* (343 Ill. 531; 76 A. L. R. 362, 373); and on that point each appellate court appears to have ruled that where the contestant has

specially denied every essential of the proponent's petition, thus putting in issue capacity, freedom, execution, etc.; and upon the close of all the evidence the surrogate took from the jury every part of the issue but the denial of freedom by the allegation of undue influence and only the proponent opened and closed to the jury, it was material error for the surrogate to instruct the jury that "if upon the whole case the probabilities were evenly balanced in the mind of the jury, then the verdict must be for the contestants." The rule in surrogate practice is, therefore, that as to undue influence the "burden of proof" remains on the contestants throughout the whole case. Several questions have been occasioned by the implications of that ruling. We need not consider the effect of an answer that admitted capacity and execution, and denied only the freedom of testator in the exercise of that ability. The answer here is identical with that in the *Schillinger* case, putting everything in issue. The questions are, if there are two "burdens" and two affirmatives, and there are two rights to open and close, which stands ahead of the other; and must the one holding, for the time, an affirmative, present all of his respective case in chief before resting.

In the case cited the opinion of higher courts seems to use the term "burden of proof" in but one sense, as applicable alike throughout both the testimony and the decision; and they apply it in the form of words in which it has commonly been used with reference only to the adducing of testimony. The rule for measuring a possible case at nonsuit apparently is to be regarded as identical with the rule for weighing a probable case, in the jury room, through like stages of its development there — the difference between the two being only one of degree.

It seems to follow that upon an issue so broadly joined, the denial of freedom is to be given effect as if it were an "affirmative defense;" and that it is beside the point now to consider a last will as a simple, "unscrambleable" legal act, the validity of which was to be tested by the common-law formula of inquiring whether it was the actor's "free act and deed;" but that a will in contest before a surrogate must now be regarded as an act so presumptively both sane and also free that throughout the testimony and the decision, the denial of freedom alone is equivalently an assertion of new matter extraneous to the unconfessed and contested act in question, and not merely a specific assertion that some inherent essential of petitioner's cause of action is absent; and that while in some cases confession and avoidance are implied only in extraneous matters like payment, release, bankruptcy and illegality, still as to fraud, mistake and force, in their bearing on the making of a last will, it is not permissible to say in surrogate's practice

that only superficial appearances of the act having been done are to be deemed impliedly admitted, and that the substance remains ever in traverse; but that we must now regard the denial of freedom as almost tantamount to a plea in confession and avoidance in contested probate, when we consider how scant the proponent's case in chief may be and yet avoid nonsuit.

Against that background — the soundness of which can no longer be challenged — the several questions mentioned above must be examined. In the case at bar the petition for probate is entirely put in issue by the contestant's omnibus " broadside " of objection. Had contestant admitted soundness of mind and statutory execution, and denied only the testator's freedom of action, or admitted even that and set up a later revoking will, the question of the right to open and close might be decided in favor of contestant. Were a jury to try the broad issue as it now stands herein, both parties would have an affirmative, under the *Schillinger* case, and then the petitioner alone, according to the common-law rule, would probably be allowed to open and close to the jury on the whole matter.

Now, as to the " burden of proving " as distinct from the " burden of having proven," notwithstanding the whole of the petition is in issue herein, the petitioner will begin the production of testimony by proving only the ceremony and the competency, at any length he may choose; but not — if any party who has not had the opportunity to cross-examine make objection — either by offering the deposition of the attesting witnesses that is commonly used in non-contested probate, or by offering the record of an examination, either before trial or preliminary to or connected with the right of filing objections. Proponent may, at least, rest on such *prima facie* proof as raises the presumption of sanity; and under the *Schillinger* case he in Surrogate's Court may omit the customary finale, " Did he appear to be under any restraint," for that question now would be merely anticipating what now must be deemed new and distinct matter of defense, as distinct from the product of a mere denial, properly so called. No presumptions, however, aid in eking out a sufficient basis for a possible inference that the statute was complied with in the matter of subscription, publication and attestation. As to those statutory matters, the proponent, at the outset, must, as a rule, fully develop his case in chief, at the risk of limitation of rebuttal.

Then if the surrogate deny a nonsuit, the contestant will call witnesses to support his " affirmative defense " of restraint, and will, as a rule, be obliged to complete his case in chief on that subject, at the risk of having his reply limited later on; and when he rests, if the surrogate hold that an inference of restraint is possible —

whatever may be its probability — the proponent will then completely produce all testimony he may have to offer in reply or rebuttal, to support the will, or meet the contestant's testimony; and thereupon the contestant will have an opportunity to reply to the proponent's most recent showing; and as a rule, will be limited thereto. It should be said, generally, that this duty of completing a case in chief is a matter that rests in the sound discretion of the trial court, and has no necessary connection with the rule as to where the risk of jury doubt shall ultimately be placed; and that even where each party has an affirmative and both claim the right to open and close to the jury, only an abuse of discretion in the circumstances, in alloting it solely to the petitioner or the plaintiff, would be considered a material mistake, although an " affirmative " lies much closer to the matter of " burden " than does the rule on completing the case in chief.

In passing on the several questions raised herein, discussion of the cases has been omitted (See Davids N. Y. Law of Wills, §§ 227–229), because it can be said, generally speaking, that up to the charge when a jury is present with the surrogate, our traditional method of trial procedure in these respects had not been changed as the result of recent decisions, except in very minor respects, if at all.

Enter an order in accord with this decision.