## In the Matter of the Estate of WALTER T. CRILL, Deceased.

Surrogate's Court, Oneida County, December 31, 1924.

Wills — probate — execution of holographic will — will was made within one year before probate — evidence shows due publication required by Decedent Estate Law, § 21, subd. 3 — attesting witnesses did not see testator sign and did not see signature — will was not subscribed in presence of witnesses or acknowledged to have been subscribed as required by Decedent Estate Law, § 21, subd. 2.

The will offered for probate in this proceeding was duly published in accordance with subdivision 3 of section 21 of the Decedent Estate Law, since it appears

that the testator spoke to the attesting witnesses about the will some time before they were called on to witness it and requested them to sign as witnesses at some time when the three of them wer: together alone and that at the time the alleged will was signed by the witnesses the testator told them in effect that the paper was his will.

But the will was not subscribed in the presence of the witnesses or acknowledged by the testator to have been subscribed in accordance with the provisions of subdivision 2 of section 21 of the Decedent Estate Law, since it appears from the testimony of the subscribing witnesses, who testified within one year from the time they signed the will as witnesses, that the testator did not sign the will in their presence; that the will, which is a holographic one without an attestation clause, was written on one sheet of paper which was so folded at the time the witnesses signed that they could not see the body of the instrument; and that they did not see the testator's signature on the instrument.

The fact that the testator referred to the instrument as his will and that a handwriting expert testified that the signature was written on the will apparently after the body of the instrument had been written does not justify the court in holding that the testator signed in the presence of the witnesses.

This case does not present such a lapse of time and failure of memory or recollection on the part of the witnesses as to justify the court under all the circumstances in presuming the due execution of the will.

PROCEEDING for probate of will.

*Ward J. Cagwin,* for the proponent and Lillian Affolter.

*Walter G. Shankenbery,* special guardian for the minor Alberta Dillenbeck.

JONES, S.:

This is a contested probate proceeding. An instrument bearing date of January 3, 1924, was offered for probate in this court, purporting to be the last will and testament of one Walter T. Crill. One of the heirs at law and next of kin, Alberta Dillenbeck, was a minor, and upon the return day of the citation herein, W. G. Shankenbery was named special guardian and he filed objections to the probate of said will.

The purport of the objections was that the will had not been duly executed as provided by section 21 of the Decedent Estate Law. There is no issue raised of undue influence, fraud or of lack of testamentary capacity. The matter came on for hearing before the late surrogate, without a jury, and by stipulation the issues raised were submitted to the present surrogate for decision upon all proceedings and testimony taken. Later the present surrogate reopened the matter and examined the subscribing witnesses with reference to the condition and appearance of the paper, which is Exhibit 1 in this case, at the time it was signed by them.

The will offered for probate is as follows:

" WESTERNVILLE, N. Y.

" To whom it may concern.

" This is my last will, and I order that the following be carried out.

" *First.* I order that my funeral expenses be paid, which shall be reasonable in price.

" All the rest of my property that I may possess at the time of my death I give to Lillian Affolter, who now lives in the City of Rome, N. Y.

" There shall be no contest over this will, and I order, that if any one does contest this will, the one who does contest it shall not receive any of my property.

" I name Thomas M. Carroll as executor.

" Dated *Jan.* 3, 1924.

" WALTER T. CRILL.

" *Witnesses* { WILLIAM MASNER
FRANK A. SEELOW."

The instrument is wholly in the handwriting of Walter T. Crill, the testator, aside from the signatures of the two witnesses, as is shown by the evidence in the case. It is a holographic will.

Section 21 of the Decedent Estate Law provides for the manner of the execution of a will as follows:

" 1. It shall be subscribed by the testator at the end of the will.

" 2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.

" 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.

" 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

There is no question but what the instrument was subscribed by the testator at some time at the end of the will as provided by subdivision 1 of said section.

It appears from the evidence that some time before the occasion on which the two witnesses signed their names to the instrument in question, the testator, Walter T. Crill, had spoken with each of them separately in regard to a will, and the witness Seelow testified that Crill had told him that he had a will, and that some time when the three were alone asked him if he would sign, and the witness Masner testified to a conversation with Crill in which the latter said he had a will drawn up, that he drew it up himself and that some night " when we are in here alone, I want to sign it." One evening, some time later, the instrument was signed by the two wit-

nesses, and Seelow is of the opinion that it was later than the date on the instrument, possibly in February or March, but later admitted he saw Crill about the date of the instrument. Masner testified that it must have been the last of January, or the forepart of February.

At the time in question the three persons, Crill, the testator, and the two witnesses, were alone in the store at Westernville. Seelow testified that testator said: " Now the three of us are here together, we will sign the paper." And he, Seelow, asked what he meant and Crill replied: " That will." Masner testified that Crill said: " It is a good time to sign that paper," and that he, Masner, spoke up and said: " What paper do you mean, Walter? " Crill replied: " That will." And Masner replied: " Oh, all right."

In view of the previous conversations between the testator and the two witnesses before the time of the signing by Seelow and Masner and the conversation at the time of the signing, I find that the third requirement of section 21 has been complied with, to wit, that there was a due publication of the instrument as a will. (See *Matter of Marley*, 140 App. Div. 823, 825; *Matter of Beckett*, 103 N. Y. 167; *Perham* v. *Cottle*, 98 Misc. 48.)

There were two persons who signed their names as witnesses to said will.

We now come to the second requirement of section 21 of the Decedent Estate Law which I have reserved to the last and which is in my opinion the principal question in the case, and that is, did this testator sign his name in the presence of each of the attesting witnesses, or did he acknowledge his signature to said instrument to each of them?

The witness Masner testified in substance that he did not know where testator produced the paper, Exhibit 1, from, and the first he saw of it, it was folded and on the desk; that he did not see who folded the paper and that he could not see the contents thereof; that no writing was visible when he signed his name as witness, except possibly the word " witnesses;" that Crill handed him the pen and he had no knowledge whether Crill's signature was placed on the paper before or after he signed; and that he did not see Crill do any writing, and as far as eye-sight was concerned, the paper which he signed was blank and that looking at it as folded he did not see any writing above his signature and did not see the signature of Walter T. Crill. Witness further testified that the first time he saw the name Walter T. Crill on the instrument was after testator's death.

Witness Seelow testified in substance that he did not know where testator got the paper from, but that Crill laid it folded on

the desk before Masner signed; that when witness signed his name there was no writing visible, except Masner's signature; that he saw no one sign the paper but Masner, and that he signed after the latter. Witness could not say whether the name of testator was on Exhibit 1 at the time he signed; that when he signed his name that possibly the word " witnesses " was visible, but as to that he was not sure. Witness testified that he never saw the signature of Walter T. Crill, or any part of the will, until it was produced in court.

The instrument in question is an ordinary piece of ruled pad paper, substantially eight inches in width by ten inches in length, with writing on one side only, and as filed for probate had been folded into horizontal thirds, with well-defined creases, so that when thus folded the writing is entirely covered and nothing is to be seen, aside from the filing mark of the court, which is on the other side of the paper from the writing; the upper third of the paper when folded down leaves the words " dated Jan. 3, 1924. Walter T. Crill. Witnesses: William Masner, Frank A. Seelow " revealed; when the lower third is folded up the words are in sight beginning with " Westernville, N. Y.," down to the line which starts with the words " Lillian Affolter." A portion of the word " Lillian " and the letter " A " are in sight and nothing more, as the crease is not exactly horizontal.

Both witnesses testified that at the time they signed their names the paper was folded. Seelow testified that in his opinion when he signed the lower two-thirds of the paper had been folded up and then the portion on which he and Masner signed was folded down again, but that Crill's signature was not visible. There appears to be a fold, not a crease, in the paper just under Crill's signature, so that if the portion on which the witnesses signed was turned down at that fold, as Seelow says, and as the paper appears, Crill's signature was not visible.

Masner, on the other hand, testified that as the paper laid flat the upper portion of it had been folded down almost to the bottom, leaving just room enough for him to sign; he testified that as the paper was thus folded when he signed, testator's name was not visible.

According to Seelow's evidence, he signed the paper as it lay before him folded near the top, while Masner says that he signed near the bottom. There is, it will be noticed, in the testimony of these two witnesses a difference as to the folding of the paper in question, but they are positive that whichever way the paper was folded, the signature of Walter T. Crill was not visible to either of them at the time they signed. As to the word " wit-

nesses " to the left of Masner's signature, neither of them seems sure as to whether that word was on the paper when they signed. Seelow says as he recalls it was; Masner says he would say it was not, but was not sure.

Aside from the conversation related by the two witnesses when testator recalled to them about signing that paper, there was no other talk in regard to the will, except that Masner asked Crill where he wanted him to sign and Crill indicated by saying: " Oh, right down there."

The evidence also is that neither witness saw testator do any writing, and there is no evidence that he had a pen in his hand that night when the witnesses were present, except that Masner testified that testator handed him the pen when the latter signed.

A handwriting expert was sworn, who testified that in his opinion the instrument in question, from the words " Westernville, N. Y.," to and including the word " executor " were written at one time, and all appear to be the same heft of writing, same color of ink and were written at the same time, and that all are in the handwriting of Walter T. Crill; that the words " Dated Jan. 3, 1924. Walter T. Crill " and the word " witnesses " appear to be written with the same coarseness, the same colored ink, and were written at a different time than the body of the instrument, and that these were in the handwriting of Walter T. Crill. Witness thought that the signatures of the two witnesses, the word " witnesses," the signature of Crill and the date, appeared to be in about the same colored ink, written with the same pen and at the same time, but by a different hand. Witness said he had no method of telling whether the signature of Walter T. Crill and the word " witnesses " were written on the same day as the signatures of Masner and Seelow.

Obviously, " at the same time," as testified to, means approximately the same time, and between the writing of the different words there might elapse several hours or possibly a few days.

In *Matter of Mackay* (110 N. Y. 611) the rule is laid down that witnesses should either see the testator subscribe his name, or should, the signature being visible to him and to them, acknowledge it to be his signature. (See, also, *Lewis* v. *Lewis*, 11 N. Y. 220, and *Matter of Keeffe*, 155 App. Div. 575; affd., 209 N. Y. 535, for statement of rule that if signature is acknowledged it must be visible.)

In *Matter of Laudy* (161 N. Y. 429) testator signed the will immediately beneath the attestation clause and one witness testified there was a signature, or writing, just above where he signed. The other witness testified she was not aware that she saw the signature

of testator, but signed under the name of the other witness, but the latter was in a position to see and hear all that the other witness saw and heard. The court held that it was a question of fact for the jury and they could have found that both saw the signature from the evidence and said that where there is no claim of fraud, if the signature is there, as it was in the case, and visible, and the witnesses heard the acknowledgment thereof and the declaration that the instrument is a will, but they do not look closely to see the signature, although it is before their eyes, the will should not be refused probate because those persons are careless or indifferent. The *Laudy* case, however, differs from the one now before this court in that, in that case, there was a question of fact as to the visibility of testator's signature; one witness testifying that although the paper was folded there was a signature or writing visible above his when he signed. In the case now before this court there is the positive evidence of the witnesses that the instrument was so folded that testator's signature was not visible and was not seen by either of the witnesses when they signed.

No question is raised in this case as to the credibility or truthfulness of the two subscribing witnesses, and there is nothing which would warrant the belief that they are hostile witnesses; and from the evidence in this case, the witnesses, it appears, did not see testator's signature when they signed, nor was the same visible to them, and testator made no remarks pertaining to said signature with a visible signature before said witnesses.

The will now before this court is a holographic will, without an attestation clause, and it is urged that the courts are not as strict in holding what is a compliance with the statute in such cases as in others. The courts hold, however, that a substantial compliance with the requirements of the statute is necessary and that in respect to holographic wills no exception is made, and even in such cases there must be substantial compliance with the formalities of the statute. (*Matter of Turell*, 166 N. Y. 330; *Matter of Beckett*, 103 id. 167, 174; *Matter of Paez*, 107 Misc. 586; *Matter of McDonough*, 201 App. Div. 203.)

The court in *Matter of McDonough* (*supra*, 205) says: "A substantial compliance with the statutory formula may suffice but the liberality of the judicial rule which tends to accomplish justice in a proper case cannot be strained to the point of ignoring the requirements of the statute."

The court in *Delafield* v. *Parish* (25 N. Y. 9, 35) says: " It is not the duty of the court to strain after probate, nor in any case to grant it, where grave doubts remain unremoved, and great difficulties oppose themselves to so doing."

MATTER OF CRILL.    **141**

Misc. 134]    Surrogate's Court, Oneida County, Dec mber, 1924.

In *Matter of Akers* (74 App. Div. 461; affd., 173 N. Y. 620), a holographic will case, one witness testified that testator stated to both witnesses that the instrument was his will and asked them to sign; that witness saw signature of testator when he signed as witness; the other witness stated testator requested him to sign, but was unable to state whether he saw signature of testator; held to be a substantial compliance. In that case, however, we again have positive evidence that the instrument was in such a position when the witnesses signed that the signature was visible, one witness testifying that he did see said signature. That is materially different from the case at bar.

In *Matter of Phillips* (98 N. Y. 267), another holographic will case, the instrument was on one page and is very similar in appearance, in fact almost identical, with the form of the present instrument. The will was admitted to probate, but there was this material difference in that case and the present one: In the *Phillips* case the will was not folded and both witnesses saw testator's signature.

In *Matter of Marley* (140 App. Div. 823), another holographic will case, one witness testified that he and testator had had a talk sometime before and that he had executed a will and testator had signed as a witness. Later the testator had prepared and signed the instrument in question and told witness he would like to have his signature on the paper and told him it was the same kind " you asked me to sign for you." Witness testified he knew he was being asked to sign as a witness to a will, and he did sign under an attestation clause in testator's presence and saw and recognized testator's signature, with which he was familiar. The other witness' testimony was so unworthy of belief and so preposterous that his testimony was ignored, he having signed under the attestation clause and under the signature of the other witness. Again in this case the signature of the testator was visible.

*Matter of Wilcox* (37 N. Y. St. Repr. 462) is another holographic will case. The body of the instrument and the attestation clause were in a light colored ink and the signature of testator, date of instrument and signatures of witnesses were in dark ink. The witnesses remembered very little of the transaction and could not testify positively that the will was signed by testator; one witness testified that the instrument was not so folded as to obscure testator's signature. There was, however, an attestation clause in perfect form which both testified testator read over to them before they signed and one rather thought he saw testator's signature; that there was something there. The will was admitted to probate. That case differs from the one now before the court in as much

as the instrument was not folded, and there was no positive proof that testator's signature was not there and in sight, and further there was an attestation clause upon which the court laid great stress. That instrument was executed about seven years prior to testator's death. (See, also, *Matter of Hunt*, 110 N. Y. 278, where there was an attestation clause and no positive evidence against due execution.)

In all holographic will cases that have been called to the court's attention by the attorney for the proponent herein and other cases examined where the will has been admitted to probate, one or more of the witnesses did, as a matter of fact, observe testator's signature when they signed as a witness, or the same was visible when they did sign, although the same was not seen by them, or there was an attestation clause.

In the case now before this court there is no attestation clause and the proof is that testator's signature was not visible, due to the folding of the paper when the witnesses signed, and as folded it could not, as a matter of fact, be seen by them, and they did not see him sign his name. No case exactly in point to the one now under consideration has been found in the books.

It is clear under the evidence that neither of the witnesses saw testator's signature upon the paper, Exhibit 1, until after his death, and there was no visible subscription acknowledged by him to each of the attesting witnesses. Did the testator, however, subscribe his name to the instrument in the presence of the two witnesses? The witness Seelow says he saw no one else sign the paper but Masner, and does not recollect seeing testator do any writing. Masner testifies that he did not see testator do any writing either before or after he signed as a witness. On the evening in question testator called the attention of the witnesses to a will and informed them that now the three of them were together they would sign the instrument. Sometime later, the length of time does not appear, testator obtained the paper from some place in the store and placed it on a high desk in back of the counter, which desk was about ten feet from where witnesses were sitting on the other side of the counter. Nothing further was said by him until he called them to come to the desk to sign; after they had each signed the paper as hereinbefore related, the witnesses testified that testator took the instrument, placed it in an envelope and made the remark that that was done.

To my mind, however, these facts, together with the evidence as to handwriting in the case, do not warrant this court in finding that under the law testator actually signed in the presence of the witnesses. The facts in this case are not similar to the ones in

*Spaulding* v. *Gibbons* (5 Redf. 316), where two persons, one of whom was a witness to the will, testified as to the signature of the testator in their presence and also in the presence of the other witness to the will, and that this other witness was standing in the doorway from where he could see and hear all that was going on. This other witness, however, did not say he was not present, but only that he did not see testator sign, and on further examination said he did not remember whether or not he saw testator sign. The court held in view of the evidence in the case that the will was signed by the testator in the presence of this second witness. That case, however, differs very materially from the one now before this court in that there is positive evidence of the actual signing of the instrument by testator in the presence of the witnesses, while in this case the fact of said Crill's signature being there can only be surmised. Nor are the facts in the present case similar to those in *Peck* v. *Cary* (27 N. Y. 9).

As to what constitutes signing in the presence of the attesting witness is well expressed in the case of *Gardiner* v. *Raines* (3 Dem. 98, 102) in the following language: " The intention of the Legislature was, not simply that the witnesses and the testator should be within the same enclosure, but that the witnesses should either actually see the testator write his name, or should have their attention directed to the act of signing while the same is taking place."

From the evidence in this case it cannot be found, or even inferred, that the attention of the witnesses Seelow and Masner was directed to the act of signing by Crill, if he did sign in their presence that night while the same was taking place.

There is no proof in the case showing whether testator signed his name to the instrument before the witnesses signed or after they did. Possibly there might be a presumption, from the fact that testator placed the instrument in an envelope and made the remark that " that is done," that all parties, testator and the two witnesses, had signed, but such a presumption, together with facts surrounding the execution of the paper, do not constitute a due execution of the will under the statute.

Section 142 of the Surrogate's Court Act allows the surrogate to admit a will to probate if a subscribing witness has forgotten the occurrence, or testified against the execution of the will, upon proof of the handwriting of the testator and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove a will on the trial of an action. It does not appear in this case that the witnesses have forgotten the occurrence, as they testified quite definitely to most of the circumstances attending

the execution of the paper, while differing in some particulars, as for example the exact manner in which the instrument was folded and the presence of the word " witnesses." The whole transaction as to the execution of the instrument and the trial is within a year.

The court in *Woolley* v. *Woolley* (95 N. Y. 231, 235) quotes with approval from *Wilson* v. *Hetterick* (2 Bradf. 427), as follows: " Where there has been such a lapse of time, between the act and the time when the witness is called upon to testify concerning it, as to justify the inference that his recollection of the circumstances may be imperfect, due celebration of the forms necessary to make a valid will may be presumed, unless there be evidence repugnant to such a presumption. To authorize an inference of this kind, however, it is not sufficient for the witnesses merely to say, they do not recollect, or that the requisite form may have been complied with and have escaped their memory. But there must be enough in the circumstances, and the remote date of the transaction, to lay the defect in the proof upon the infirmity of the human memory." Also quoting from *Lewis* v. *Lewis* (11 N. Y. 220) as follows: " It [the formal execution of a will] cannot be presumed, in opposition to positive testimony, merely upon the ground that the attestation clause is in due form, and states that all things were done which are required to be done to make the instrument valid as a will."

The case now before the court, as it appears to me, does not present such a lapse of time and failure of memory or recollection on the part of the witnesses as to justify the court under all the circumstances in presuming the due execution of the will.

In view of the foregoing, I find that the testator did not subscribe his name to the instrument, Exhibit 1, in the presence of the attesting witnesses and neither did he acknowledge such subscription to have been so made by him to each of the attesting witnesses, either of which is mandatory under subdivision 2 of section 21 of the Decedent Estate Law. If the signature of the testator was subscribed to the instrument at the time it was signed by the witnesses, the same was not visible and could not be seen by the latter when they signed.

As the court said in its opinion in *Matter of Andrews* (162 N. Y. 1, 5): " It has been repeatedly laid down as the rule in this state, in cases we shall presently discuss, that the intention of the testator is not to be considered when construing this statute, but that of the Legislature. The question is not what did the testator intend to do, but what has he done in the light of the statute? It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is

better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills."

While a court may hesitate before denying probate to a will, where there is no question raised of fraud, undue influence or lack of testamentary capacity, it is confronted with the fact that a disposition of property by will is not an inherent right, but it is a right conferred upon the individual by statute and certain definite requirements have been made by the legislative body in order to constitute due execution, and though it may work hardship in particular cases, it is not for the courts to set aside and ignore the law pertaining to due execution of testamentary instruments.

Probate denied and decreed accordingly.