In the Matter of the Estate of MARTHA J. MULLIN, Deceased.

Surrogate's Court, Kings County, April 1, 1932.

*Fox & Winter*, for the contestant James T. Gardner.

*John H. Donlan*, for the petitioner.

WINGATE, S. Blackstone defines a " will " as " the legal declaration of a man's intention to be performed after his death." (*Matter of Greenberg*, 141 Misc. 874, 881.)

" The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the legislature as expressed in their enactments. It can withhold or grant the right, and if it grants it, it may make its exercise and its extent subject to such regulations and requirements as it pleases." (*Matter of Bergdorf*, 206 N. Y. 309, 316; *Matter of Greenberg*, 141 Misc. 874, 887.)

The conditions which legislative fiat has imposed on this privilege are numerous. It has been enacted that " All persons, except idiots, persons of unsound mind and infants, may devise their real estate, by a last will and testament, duly executed, according to the provisions of this article." (Dec. Est. Law, § 10.)

" Every person of the age of eighteen years or upwards, of sound mind and memory, and no others, may give and bequeath his or her personal estate, by will in writing." (Dec. Est. Law, § 15, as amd. by Laws of 1923, chap. 233.)

Finally, in this connection, the manner of execution and attestation necessary to validity are particularly specified in section 21.

Whereas other conditions are imposed on the power of disposal, such as those which forbid restraints on alienation beyond two lives in being at the death of the testator (Real Prop. Law, § 42, as amd. by Laws of 1929, chap. 229), the gift of more than one-half of his property to charity, by one leaving certain specified relatives (Dec. Est. Law, § 17, as amd. by Laws of 1929, chap. 229) and the gift of more than a specified proportion of the estate to others without the consent of a surviving spouse (Dec. Est. Law, § 18, added by Laws of 1929, chap. 229), these do not go to the basic question of the validity of the testamentary document, but merely concern its operative effect, whereas those first enumerated are conditions precedent to any right whatsoever to dispose of property by will.

It follows as a logical conclusion, therefore, that when any person propounds a will for probate, he is under the obligation of demonstrating that all of the conditions imposed by the Legislature upon the exercise of such right have met with compliance. These are:

1. That the testator was not an idiot or person of unsound mind or memory;

2. That he had reached the age of eighteen, if only personalty is involved in the disposition, or twenty-one, if it concerns realty;

3. That the propounded instrument was signed at the end by the testator;

4. That he made such subscription in the presence of, or acknowledged it to, two witnesses;

5. That at the time of such subscription or acknowledgment, he declared it to be his last will and testament;

6. That these two witnesses signed the instrument at its end, at the request of the testator; and

7. That the testator is dead.

Unless all seven of these matters be demonstrated by the proponent, he will have failed to bring his will within the class of cases in which the limited right of testamentary disposition has been accorded by the Legislature and probate thereof must be disallowed.

As a strictly logical matter, a compliance with these requirements is all which a proponent should be compelled to demonstrate in the first instance to entitle the instrument to a declaration of validity and such is the fact in the usual case. (*Matter of Kellum*, 52 N. Y. 517, 519; *Howland* v. *Taylor*, 53 id. 627, 628; *Rollwagen* v. *Rollwagen*, 63 id. 504, 517; *Matter of Martin*, 98 id. 193, 196; *Matter of Schillinger*, 258 id. 186, 188; *Matter of Eno*, 196 App. Div. 131, 165; *Matter of McDonough*, 201 id. 203, 205; *Matter of Weeks*, 137 Misc. 52.) With these elements of proof, a contestant has nothing to do; the burden of their demonstration rests wholly and at all times on the proponent, and this burden must inevitably be borne by him even in the absence of any contest, since section 144 of the Surrogate's Court Act definitely fixes such showing as a prerequisite to admission to probate. (*Matter of Schillinger*, 258 N. Y. 186, 188.) It follows, therefore, that no act of a contestant can increase or lessen proponent's obligation in this regard, wherefore even though such contestant affirmatively alleges the absence of one or more of the prescribed prerequisites to probate, as was done in the case at bar, this will not impose upon him the burden of proving his negative allegation under the penalty of having the will admitted to probate if he fails in this respect. He may remain absolutely silent, yet if the proponent fails to establish these points, probate will be denied.

A demonstration by the proponent of the conditions to validity prescribed by the Legislature will, however, entitle the document to probate in the usual case. This result, also, rests on a logical basis. When a person of mature age and sound mind has complied with the statutory requirements respecting the execution of a will, it is a natural inference from customary behavior and usually existing conditions that this solemnly attested document represents his wishes regarding the disposal of his property when he can no longer personally direct its use. Such is the case in the overwhelming preponderance of cases. It is, therefore, incumbent upon

any person maintaining that a particular case represents a variation from such familiar experience, to demonstrate the fact. Such instances are those in which although all of the conditions specified by the Legislature have met with compliance, the mind of the testator has been overcome by fraud, or undue influence. When the objection to the probate is based on either of these grounds, the burden of proof in respect to them rests upon the respondent, since he has, in effect, made an allegation that exceptional conditions surround the document in question, and his failure to demonstrate the presence of such unusual conditions will raise an inference that those customarily experienced prevailed. (*Matter of Martin*, 98 N. Y. 193, 196; *Matter of Kindberg*, 207 id. 220, 228; *Matter of Anna*, 248 id. 421, 427; *Matter of Schillinger*, 258 id. 186, 189; *Matter of Connor*, 230 App. Div. 163, 165.)

The final basis of objection to probate which deserves consideration, namely, that the testamentary document did not represent the actual wishes of the testator respecting the disposition of his property, is a situation on the borderland between undue influence or fraud on the one hand, and lack of testamentary capacity on the other. The first New York case with which the court is familiar which refers to the matter is *Chaffee* v. *Baptist Missionary Convention* (10 Paige, 85, at p. 90), but the question was squarely passed upon by Surrogate BRADFORD in 1851 (*Weir* v. *Fitzgerald*, 2 Bradf. 42, 68, 69) in respect to a blind testator, the surrogate placing the burden of proof in this regard upon the proponent as a part of his demonstration of the validity of the document. That case is cited with approval and followed by the Court of Appeals in *Rollwagen* v. *Rollwagen* (63 N. Y. 504, 518, 519) and its principle appears now to be settled respecting such situations. (*Matter of Redell*, 107 App. Div. 284, 286; *Matter of Regan*, 206 id. 403, 408; cf. *Matter of Reilly*, 139 Misc. 732, 738.)

The pertinency of the foregoing observations is due to the motion of the proponent in the instant probate proceeding for a bill of particulars respecting certain items of the contestant's objections. These affirmatively alleged that (1) the testatrix did not sign or acknowledge the will in the presence of two attesting witnesses; (2) she did not declare the papers offered for probate to be her last will; (3) there were not two witnesses who signed at the end of the will; (4) she did not know the contents of the propounded papers and that they did not express the testamentary disposition intended by her; (5) she did not possess testamentary capacity at the time of execution; (6) their execution was produced by undue influence; and (7) their execution was produced by fraud.

On the rules and for the reasons hereinbefore noted, it is obvious

that the matters covered by the first five objections comprise those which the proponent must affirmatively prove to the satisfaction of the court before probate can be allowed.

The provisions of the Civil Practice Act are expressly made applicable to Surrogates' Courts " except where a contrary intent is expressed in, or plainly implied from the context " [the Surrogate's Court Act]. (Surr. Ct. Act, § 316.) It follows, therefore, that section 247 of the Civil Practice Act, relating to bills of particulars, should be applied in determining the rights of the parties on this application.

It is familiar law that a party to an action will not be compelled to furnish particulars to the other respecting matters which are a part of the affirmative case of such other (*Knickerbocker Trust Co.* v. *Miller*, 149 App. Div. 685, 686; *King* v. *Ross*, 21 id. 475; *Burns* v. *Lipson*, 204 id. 643, 645; *Brandt* v. *City of New York*, 99 id. 260, 261; *Stanley* v. *Block*, 56 id. 549, 550; *Smith* v. *Anderson*, 126 id. 24, 26), and this rule is not varied by the fact that a pleading, while amounting in substance to a mere general denial of essential elements of the opponent's case, is affirmative in form. (*Wilks* v. *Greacen*, 120 App. Div. 311; *Barreto* v. *Rothschild*, 93 id. 211, 212; *Gray* v. *Shepard*, 13 N. Y. Supp. 27, not officially reported; *Matter of Ross*, 115 Misc. 41; affd., 197 App. Div. 933.) It follows, therefore, that particulars as herein demanded must be denied in so far as they concern the first five of respondent's objections, since in respect to them the burden of demonstration rests wholly on the proponent and if he fails in this regard his petition will be dismissed irrespective of the attitude of the objector in regard to them.

Conversely, however, where the burden of any demonstration rests upon the other party, the latter is under obligation to state his position in his pleadings with sufficient clarity to enable his opponent to prepare to combat it. This basic requirement is universally recognized. In the Civil Practice Act it is contained in section 241, which reads: " Every pleading shall contain a plain and concise statement of the material facts * * * on which the party pleading relies, but not the evidence by which they are to be proved." The provisions of section 49 of the Surrogate's Court Act, which cover the same ground, in so far as presently material, read as follows: " All petitions, answers, and objections shall contain a plain and concise statement of the facts constituting the claim, objection or defense * * *."

In the case at bar the only statements of the objections respecting fraud or undue influence are " That the execution of the papers offered for probate was caused by undue influence," in the sixth

objection, and that it " was caused or procured by fraud," in the seventh. Both of these allegations are mere conclusions of law. Neither contains the slightest statement of fact. Both, therefore, violate the requirements of section 49, and the omissions must be remedied under the penalty prescribed in section 247 of the Civil Practice Act.

It is quite impracticable to generalize upon the subject of what statement of facts may be required from a contestant interposing objections of such a nature. The rule usually applied, of requiring the names of the persons claimed to have performed the acts of undue influence or fraud, and the times and places when and where they were accomplished, has received extensive judicial approval (*Matter of Ross*, 115 Misc. 41, 43; affd., 197 App. Div. 933; *Matter of Friedman*, N. Y. L. J. Oct. 24, 1929, p. 430; *Matter of Capobianco*, Id. Dec. 13, 1929, p. 1340; *Matter of Schwartz*, Id. Dec. 20, 1929, p. 1463), but is here questioned, the contention being that the proponent is entitled to be informed of the nature of the acts upon which the objecting party relies.

Resort to authority for a solution of the problem results merely in confusion. It is for example quite impossible to reconcile the action of the Appellate Division for the First Department in *Smidt* v. *Bailey* (132 App. Div. 177) in 1909, in reversing an allowance of a bill of particulars " setting forth the acts of fraud, undue influence, * * * practiced upon the testatrix," with the affirmance by the same tribunal in 1929 of a direction for furnishing particulars " In what respects the defendant claims the plaintiff * * * ' made misrepresentations and false and fraudulent statements ' * * *; if in writing, set forth a complete copy of the alleged ' misrepresentations and false and fraudulent statements; ' if oral, the substance thereof, the time when and the place where made, to whom on behalf of the defendant it is claimed the same were so made." (*Albert* v. *Hamilton Fire Ins. Co.*, 243 N. Y. Supp. 176; reported by memorandum only, 226 App. Div. 789.)

With such a divergence of results in courts of higher authority, it may be permissible for a tribunal of first impression to examine the question *de novo* in an attempt to reach a just and equitable result.

While paying due deference to older adjudications, it appears to the court that many of their statements indicate a belief that a litigation was a game of strategy and a matching of wits between the opposing litigants or their counsel, rather than a solemn weighing of the respective rights of the parties, attended by a full and fair consideration and adequate presentation of the merits. The conclusion seems inescapable that had effect been given to the less

technical rules of procedure now prevalent in courts of equity, and particularly in courts of probate jurisdiction, with their emphasis on basic rights rather than on form of presentation, much of the odium now attaching in the popular mind to the bench and bar would have been avoided.

For purposes of present consideration, no substantial distinction exists between undue influence and fraud. In *Matter of Schillinger* (258 N. Y. 186, 189), decided in January of the current year, the Court of Appeals referred to undue influence as " a species of fraud," thereby expressly adopting and reaffirming the statement made in *Matter of Smith* (95 N. Y. 516, 522) that " undue influence * * * is a species of fraud * * *."

An objection by a contestant in a probate proceeding on the ground of undue influence or fraud is " an affirmative assault on the validity of a will " (*Matter of Kindberg*, 207 N. Y. 220, 228; *Matter of Schillinger*, 258 id. 186, 191, 192; *Matter of Anna*, 248 id. 421), which, coming on to be heard, as it does, after the validity of the instrument is *prima facie* established, differs in no material respect from an action to set aside an instrument executed *inter vivos* on the ground that its execution was procured by fraud, with the objector acting in the capacity of plaintiff or petitioner.

If this thought be borne in mind, it is obvious that the pleadings of the objector, in respect to the issue, should in all respects conform to those which would be required of the plaintiff or petitioner in the proceeding seeking the affirmative relief of cancellation on the ground of fraud of a transaction completed between living persons.

As to the requirements of the allegations in such cases, the authorities are uniform, as the following excerpts from a few of the multitude of pertinent opinions will indicate.

In *Steiner* v. *American Alcohol Co.* (181 App. Div. 309; affd., 225 N. Y. 665) the court, in reversing an order overruling a demurrer to the complaint as not stating a cause of action, said (at p. 311): " It is a well-settled rule of pleading in a case of fraud that the mere allegation of fraud is not enough, but the facts and circumstances showing the fraud should be alleged with a characterization of their fraudulent purpose."

*Wood* v. *Amory* (105 N. Y. 278, 282) contributes the following: " Mere general allegations of fraud or conspiracy are of no value as stating a cause of action."

*Kranz* v. *Lewis* (115 App. Div. 106; appeal dismissed, 188 N. Y. 579) contains this language (at p. 108): " Moreover, the facts alleged are insufficient to sustain the allegations of fraud. It is a common rule of pleading that a bare allegation of fraud is an allegation of a conclusion of law, and therefore not issuable. The

facts constituting the fraud have to be specifically alleged. * * * The complaint should state in terms just what the representation was * * * so that it could be seen not only whether it was false but whether it was material."

The pertinent rules in this regard are succinctly summarized in *Hull* v. *Cohen* (141 Misc. 62, at p. 63): " It is not enough to allege generally that the defendants defrauded the plaintiff (*Knowles* v. *City of New York*, 176 N. Y. 430) * * *. These allegations are of no effect unless facts upon which they are based are set forth. * * * ' The object of a pleading is to further the ends of justice, not to entrap a suitor in a mass of technicalities and absurdities.' (*Conner* v. *Bryce*, 170 N. Y. Supp. 94, 95.) Ultimate facts do not mean conclusions of law but issuable facts in an action for fraud, such as material statements, falsity, scienter, reliance, deception and damage. (*Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 170, 173; *Wood* v. *Amory*, 105 id. 278; *Butler* v. *Viele*, 44 Barb. 166, 167; *St. Hubert Guild* v. *Quinn*, 64 Misc. 336.) Each one of the elements is important and if the complaint fails to allege facts to sustain them, it is insufficient. (*Kranz* v. *Lewis*, 115 App. Div. 106.) Reliance and deception are as important as any other element of the cause of action. (*Brackett* v. *Griswold*, 112 N. Y. 454; *Lyons* v. *Scriber*, 174 N. Y. Supp. 332; 12 C. J. 639.) "

Other authorities to like effect are *Barber* v. *Morgan* (51 Barb. 116, 132); *Evertson's Ex'rs.* v. *Miles* (6 Johns. 138, 141); *Wells* v. *Jewett* (11 How. Pr. 242, 245); *Brown* v. *Brockett* (55 id. 32, 34); *P. & M. Motor Car Co.* v. *Paris* (185 N. Y. Supp. 835, not officially reported); *Woolsey* v. *Sunderland* (47 App. Div. 86, 87); *Goldstein* v. *Parker* (8 N. Y. Supp. 865, not officially reported; affd., 128 N. Y. 577); *Cohn* v. *Goldman* (76 id. 284, 286); *Knapp* v. *City of Brooklyn* (97 id. 520, 523).

As noted, section 49 of the Surrogate's Court Act requires that " * * * answers, and objections shall contain a plain and concise statement of the facts constituting the claim, objection or defense * * *." A bare allegation of fraud or undue influence such as is contained in the objections of this respondent is a mere conclusion of law and raises no issue. (*Hull* v. *Hull*, 225 N. Y. 342, 350, 351; *Knowles* v. *City of New York*, 176 id. 430, 437; *Almirall & Co., Inc.*, v. *McClement*, 207 App. Div. 320, 328; affd., 239 N. Y. 630; *Cass* v. *Realty Securities Co.*, 148 App. Div. 96, 99, 100; affd., 206 N. Y. 649; *Walsh* v. *Van Ameringen-Haebler, Inc.*, 231 App. Div. 653, 654; *Swift* v. *Chester Carbon Co.*, 223 id. 808; *Stein* v. *Freund*, 215 id. 149, 151; *Carns* v. *Bassick*, 187 id. 280, 285; *Riddle* v. *Bank of Montreal*, 145 id. 207, 212.) It is apparent, therefore, that the respondent has failed to comply with the express legislative

requirement, which is made a condition precedent to the validity of his objections, that he give a " statement of the facts constituting the * * * objection." Such failure renders his objection nugatory and valueless. In this situation, the law provides the party offended against with alternative remedies. He may move to strike out the legally worthless pleading in accordance with the provisions of sections 277 *et seq.* of the Civil Practice Act, or may seek its amplification by the office of a bill of particulars. In the case at bar he has adopted the latter and preferable procedure and is clearly entitled to relief.

The facts respecting the alleged undue influence concerning which the proponent is entitled to be informed are the specific act or acts or course of conduct alleged to have constituted and effected such undue influence; the person or persons charged therewith and the time or times and place or places where it is alleged to have taken place.

The facts which the objector must furnish in connection with his allegations of fraud are the particular false statements, suppressions of fact, misrepresentations, or other fraudulent acts alleged to have been practiced upon the decedent, the place or places where these events are claimed to have occurred and the persons who perpetrated them; also whether such actions were accompanied by any acts of physical violence or mistreatment of the decedent or threats, and if so, the nature thereof.

Except in so far as herein expressly granted, the motion for a bill of particulars is denied. A statement of the particulars as herein directed, duly verified, will be served upon the attorney for the proponent within five days after the service upon the attorney for the objector of a copy of the order to be entered herein with notice of such entry, and from the time of service of such order and notice of entry, until compliance therewith, the contestant and his attorney will be stayed from any and all proceedings relating to the objections of undue influence and fraud, except to review or vacate the order granted herein, with like effect as if said objections had been stricken from the record.

Proceed accordingly.