In the Matter of the Estate of FREDERICK L. HEUGHES, Deceased.

Surrogate's Court, Monroe County, October 17, 1932.

*Sutherland & Dwyer,* for the motion.

*Johnson & Searle,* opposed.

FEELEY, S.   By her " omnibus broadside " of objections to probate herein, the contestant has put everything in issue, not only the ability of this decedent to make a last will, but also his freedom in the use of such ability; and she alleges that the propounded writing was procured of him by fraud and undue influence, practiced upon him by the proponents, or by some one in privity with them, whose name is unknown to the contestant.

She has already examined the two attesting witnesses, the only witnesses to the execution of the paper; and incidentally therein also looked into their knowledge of the decedent's ability to make a will.   Now, in preparation for trial, the contestant applies for an order to examine, upon the whole issue, the proponents, who are the sons, business associates of the decedent, and the nominated executors of his will and legatees therein.   The proponents oppose the motion on the ground that the relief asked for is too broad; and they do not stop there.   They themselves go to the length of asserting the " burden " of the entire issue rests upon them, even as to the freedom of the decedent.

The general rule is to allow a preliminary examination of the adverse party in so far as the testimony sought to be elicited is material and necessary to the applicant's own case; and conversely, only in exceptional circumstances will an examination before trial be allowed into the adversary's own case.

In applying the rule to the probate of a last will before the surrogate, some confusion has arisen from these sources — the disregard of the distinction between the two meanings of the ambiguous phrase " burden of proof; " then, the prevalent opinion that in probating issues joined in Surrogate's Court (but not in Supreme Court) certain old procedural statutes have, in effect, defined the term " burden " as having there but one meaning for both its former

applications; and lastly, the indefiniteness about pleas that are really special denials of some essential of the moving party's case, although worded in the positive form of affirmations of new matter, on the one hand, and on the other, allegations of new matter, properly so called, and especially such as are based on an implied admission of the moving party's plea. These often render confused and indefinite also the discussion of the right to preliminary examination, because the scope of each party's " case " is determined, roughly, by his respective " burden," or " affirmative."

It seems strange there should be any doubt, since the decision last winter in the *Schillinger Case* (258 N. Y. 186), that as to placing the risk of jury doubt, on the issue of freedom from restraint, " the contestant's evidence must preponderate." (Id. 193.) Upon him " rests the ultimate burden of producing the preponderance of evidence." (Id. 189.)

As to the other sense of the term " burden," there never has been any doubt that as regards " producing ".testimony bearing on restraint the contestant had the laboring oar from the outset of the hearing till the close of the testification.

The confusion above mentioned required this court to point out, in *Matter of Brown* (144 Misc. 440), that the traditional method of trial procedure, up to the surrogate's charge to the jury on the law, has not been changed as the result of recent decisions, except in very minor respects, if at all; and certainly it has not been in the way of adding anything to the proponent's burden.

In the *Hone Case, No. 2* (226 App. Div. 715) the contestant asked the privilege of a " general examination " of the proponent, on the authority of *Herbage* v. *City of Utica* (109 N. Y. 81); and the (unreported) ruling of the court there was that " Such examination is not found within any of the recognized exceptions to the rule as stated by text-writers who have discussed the modernized practice in taking depositions. The only cases directly in point are clearly opposed to it." (Citing *Matter of Hodgman*, [1920] 113 Misc. 215; *Matter of Oakley*, Id. 135; *Matter of Kimmerle*, 130 id. 767, and *Sands* v. *Comeford*, 211 App. Div. 406.) The contestant's right to a threshold examination, therefore, is not an absolute one, free from any restrictions. Among the recognized exceptions, in certain particular circumstances, is this matter of undue influence. In the *Hodgman Case* (*supra*) Surrogate FOLEY pointed out that different rulings follow on the differences that exist in issues as joined, which was partly illustrated recently in the *Brown Case* (*supra*); and he further said that where testamentary capacity is the " sole issue " no examination should be had of the proponent or other party by the contestant; whereas " a different rule, it would

seem, should prevail upon the issue of undue influence." (Id.) This distinction is sound; and the opinion of the learned surrogate as to undue influence rests upon a firm foundation.

From the fact that contestant now has both burdens, or rather, one hybrid burden, as to restraint, it does not follow that, in examining proponents before trial as to lack of freedom, the contestant cannot, in any case, go into the cognate matter of the decedent's mental condition.

" The issue of undue influence is quite distinct from that of testamentary capacity, yet the two are commonly found united and necessarily considered together; some authorities regard a partial incapacity as a prerequisite to the existence of undue influence. * * * The condition of the testator's mind will often determine whether a set of circumstances, ambiguous in their nature, amount to undue influence or not; the mental and bodily health of the testator will contribute to the determination of the question of whether or not he acted as a free agent." (*Matter of Henry*, 18 Misc. 149, at p. 151.)

Surrogate FowLER, in *Matter of Campbell's Will* (136 N. Y. Supp. 1086, 1104), said: " No doubt, under a charge of undue influence, contestants are at liberty to show mental feebleness as an element of coercion." In *Matter of Hock* (74 Misc. 15, 29) he had debated the propriety of the prevalent practice of pleading together both undue influence and insanity, questioning whether there be any inconsistency in so pleading, and whether there be degrees in incompetency; but he conceded there that " a weakened condition of mind may undoubtedly be considered under an allegation of undue influence; " and also that this " allegation may charge and include weakness of understanding."

Any one who has had actual experience in trying out those cognate issues needs not to be told that, for the most part, it is a practical impossibility to restrict the examination, either before or during trial, to one or other of those two points exclusively. The contestant, therefore, has a right to examine the proponents, before trial, as to their decedent's mental condition, in aid of the denial of freedom.

This is so, not because contestant's denial, as such, can be said to have changed the proponents' burden, in either sense of that term (*Matter of Mullin*, 143 Misc. 256), otherwise than to make them carry it, but because the substantive law of fraud or force, whether physical or moral, makes the victim's mental state a factor in the problem. So, it may be observed in passing, the " unscrambleable " nature of a last will, in the substantive sense of its being one's " free act and deed," appears here again to have

emerged through the technicalities; and also that, prior to the *Schillinger Case (supra)*, this was one of the reasons for holding the plea of undue influence to be but a special denial of an essential and inseparable part of the " case " that ultimately should have in its favor as a whole, if the proponent was to have his initiating assertion proven, a fair overweight of the probabilities of the whole case, no matter whose witnesses produced it.

This essential aspect of undue influence, or excessive moral force, was not particularly considered in the *Mullin Case (supra)*, where the fact of contestant having interposed the " omnibus broadside " of objection was held not to entitle proponent to have an equally broad bill of particulars thereof. For all the generality of the survey the learned surrogate of Kings county was making there, it did not escape his attention that a particular class of cases is to be found " on the borderland between undue influence or fraud, on the one hand, and lack of testamentary capacity on the other " (p. 259); and that among these is included the claim that " the testamentary document did not represent the actual wishes of the testator respecting the disposition of his property." (Id.) The blindness of testator is one of the cases mentioned; and all the rest are similar.

In none of those cases was the right to examine before trial discussed. Their reference to " burden " is in the ultimate sense of preponderance rather than production. I fail to find anything in the *Mullin* case that militates against allowing the contestant, in preparation for trial of the issue of freedom, to search about in that indefinite " borderland " for matter she could unquestionably elicit upon the trial as part of her case. Obviously, inasmuch as it would be a material mistake at trial to deny contestant the right to show any form of mental weakness as a facilitating factor in the excessive use of moral force, so it would be " reversible " error now to deny her the right to make her preparation to present that very testimony; especially, as such excess is the instrument peculiarly adapted to use on the weak and the dependent, whereas mainly by fraud are the strong to be overcome; and moreover, it is usually employed by those who stand to gain thereby, and is carried out in secrecy, or without the knowledge of the contestant; and thus the evidence lies in the exclusive possession of the proponents, or is of a circumstantial character. This contestant, therefore, can examine, before trial, as to the mental capacity and condition of the decedent, in preparing proof of her allegation that the writing in question was procured by undue influence.

As with capacity, so with regard to the ceremony of execution. This latter being the culmination of the alleged excessive moral

force, this occasion also can, once more, be explored thoroughly by the contestant, under the denial of freedom, not directly for the purpose of showing up a failure to follow the statutory ceremonies of execution, but rather to trace the alleged overpowering of the decedent, in his then state of bodily and mental health or unsoundness, through to its final accomplishment in the seeming subscription of the writing set up as having been his " free act and deed."

Next, the proponents oppose this examination generally on the ground that neither the moving papers nor the broadside of objections filed against this will comply with the requirement of section 49 of the Surrogate's Court, Act, that any such pleading or objection " shall contain a plain and concise statement of the facts constituting the claim, objection or defense." They baldly charge fraud and undue influence in substantially the broad language used in the first sentence of this decision. Here again practice in the Surrogate's Court is set at variance with that in the Supreme Court, at least, in this locality. Were it not for the local ruling, made by our Fourth Department, in the *Hone Case* (226 App. Div. 715), that such plea is good, I should continue to apply the authorities to the contrary, which were thoroughly discussed recently in a ruling on this particular point by Surrogate WINGATE in *Matter of Mullin* (143 Misc. 256, 260). In the *Hone* case the decision (unreported) of the Surrogate's Court was that " Whether it be fraud, misrepresentation, undue influence or collusion, each such defense must be definitely pleaded, and the acts constituting it be distinctly alleged," and for that reason the court ordered the bald plea to be particularized. The higher court, however, ruled that such form of pleading was good under section 49 of the Surrogate's Court Act. As no further appeal was taken, nor has any ruling to the contrary been since made, in so far as I am informed, by this department, this Surrogate's Court must be deemed to be bound by the rule laid down in the *Hone* case. Even if the plea were to be held bad here, this, at least, can be said that, at the present stage of this case, the plea in question is good as against such collateral attack as is now made upon it. It illustrates the former looseness and generality that hang over to-day, in the commonly unchallenged " broadside," notwithstanding the radical change made in the revision of 1914, which was designed to put modern surrogate pleading on the same basis, substantially, as that in the Supreme Court.

Proponents further oppose the request for an omnibus order to produce upon the examination any and all writings. There is nothing in the moving papers to justify the demand that the

928

proponents " produce upon said examination all books, papers, documents, records and memoranda concerning any and all transactions which the proponents at any time had with " the decedent. This part of the relief asked in the motion must be denied, but without prejudice to apply anew on proper showing. (*Matter of Burridge,* 144 Misc. 583; *Matter of O'Shaughnessy,* Id. 533.)

Finally, the point was not much urged that the proposed testimony would be privileged under section 347 of the Civil Practice Act; perhaps, because attention was called to the case of *Bioren* v. *Canadian Mines* (140 App. Div. 523). If upon the trial the privilege be not waived, it will remain for the trial judge to say whether the proponents can be stripped of this statutory protection against their will. Other information, indirectly obtained through the preliminary examination, will not be, if objection be made on the trial, necessarily inadmissible then because it was ascertained now by means of this examination into matters covered by the statute.

Enter an order, in accord with this decision, allowing the contestant, in aid of her denial of freedom from restraint, to examine the proponents, before trial, as to the mental and bodily state of the decedent in all of its bearing on his being free from restraint and voluntarily acting in the alleged doing of the act in question upon the occasion of the execution of the writing propounded herein as his free act and deed.