In the Matter of the Estate of JESSIE B. DAWLEY, Deceased.

Surrogate's Court, Orange County, September 13, 1933.

*Watts, Oakes & Bright* [*Charles C. Redfield* of counsel], for the proponent.

*Frederic W. Lahr*, for Lewis H. Dawley, Marion Dawley and United Brethrens Church on Staten Island, legatees.

*Ryder & Donohoe*, for the objectants.

TAYLOR, S. Alleging that the will offered for probate was not properly executed, certain distributees of the decedent applied for letters of administration, citing the legatees and the executor named in the will. Upon the return of this citation counsel for the executor stated that he intended to offer the will for probate, and, later, proceedings to this end were instituted. In the probate proceeding the witnesses were unable to truthfully sign the formal printed witness proof, and they, therefore, offered their oral testimony. Objections were subsequently filed alleging, among other things, that the will was not executed according to statute. Upon the trial date it was stipulated that the testimony of the subscribing witnesses taken upon the return of the citation, together with the cross- and redirect-examinations, should be taken as the proponent's case. Thereupon the objectants rested, offering no proof whatever, and there is presented for decision the single but most interesting question of whether or not this will was executed according to statute.

It seems that the decedent lived in the home of the subscribing witnesses (husband and wife) for quite a period of time, and that the wife had known her almost from infancy.

Mrs. Dawley was in the witnesses' dining room and after a time called the two subscribing witnesses by their first names and upon their appearing in the dining room, according to the testimony of Mr. Elberding, stated to them, " I want you to sign as a witness to my Will," and " pointed out for me to sign on a blank space," which the witness did. After he had signed his name he returned the pen to Mrs. Dawley who in turn handed it to his wife, asking her to sign as a witness which she also did. In answer to the question whether he saw Mrs. Dawley's name on the paper before he signed, the witness said, " I did not notice it. I just looked where she told me to sign and signed." The witness further testified that Mrs. Dawley did not say anything about her signature.

Mrs. Elberding, after testifying to her acquaintance with Mrs. Dawley, in answer to the broad general request to tell under what circumstances she signed the paper, and after corroborating her husband in respect to the testatrix calling her and her husband, further stated, " she said, ' William, I want you to sign my Will as a witness.' I stood between Mrs. Dawley and my husband and he signed his name and handed the pen back to her and she said, ' Mary, I want you to sign your name as a witness to my Will,' and handed the pen to me. I took it and signed the paper. She never moved her position." The witness would not state that the paper offered for probate was just as it was when she signed it, for she said, " I know she designated the place to sign my name to," and that " I didn't * * * look at anything, only where she designated to sign." The witness did not read the will and did not know its contents and could not state whether Mrs. Dawley's signature was on it at the time she, the witness, signed. This is a summary of the testimony so far as it relates to the execution of this will.

One cannot but agree with respect to situations of this sort with Surrogate KAUFMAN, who said in *Matter of Eyett* (124 Misc. 523, 524): " Surrogates' Courts are only too frequently confronted by cases indicating a tendency on the part of many persons about to make testamentary dispositions of their possessions to rely upon their own slight and faulty knowledge of such matters rather than to avail themselves of the knowledge and experience of well-qualified legal practitioners. It seems remarkable that so many people, who carefully plan, industriously work and thriftily save for years to accumulate competences for their families, will, when their aims are realized financially, jeopardize the entire undertakings and invite disaster to their loved ones by personally drafting and superintending the execution of the instruments by which their plans must, if at all, be effected. The immediate result is, of course,

the saving of a very few dollars to the testator, but with few exceptions the ultimate result to his survivors is extended and expensive litigation ending either in partial or complete failure of the attempted disposition or its being at length saved by the courts by somewhat forced construction."

Reported cases demonstrate altogether too forcibly that testators and other laymen without the aid of those who are trained in so doing too often perform " that most frequently disastrous of ultra-hazardous acts, the execution of a home-made will." (*Matter of Gavey,* 147 Misc. 332, 333.)

In this and many other cases where the probate of wills has been denied, due to faulty execution by testators themselves, or under the superintendence of amateurs, it was undoubtedly the intent of the makers of the purported wills to validly dispose of their property, but in the execution of wills we are dealing not only with the maker's intent, but with the requirements prescribed by law. (*Matter of Blair,* 84 Hun, 581, 585; affd., 152 N. Y. 645; *Matter of O'Neil,* 91 id. 516, 520, 521; Alexander, Commentaries on Wills, vol. 1, § 406.)

There is no inherent right to dispose of property by will, for wills are a creation of statute and wholly within the control of the legislative branch of our government. (1 David's New York Law of Wills, § 3; *Brearley School* v. *Ward,* 201 N. Y. 358; *Matter of Watson,* 226 id. 384, 395; *United States* v. *Perkins,* 163 U. S. 625; *Matter of Crosson,* 134 Misc. 154; *Matter of Mullin,* 143 id. 256.)

The argument against the apparent frustration of one's intention to make a will is very satisfactorily answered in *Matter of Andrews* (162 N. Y. 1, 5), wherein it was said: " It has been repeatedly laid down as the rule in this state, in cases we shall presently discuss, that the intention of the testator is not to be considered when construing this statute, but that of the legislature. The question is not what did the testator intend to do, but what has he done in the light of the statute. It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements.

" It is better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills."

The requirements as to the legal execution of a will are few and simple. They are provided in the Decedent Estate Law, section 21, to be (1) subscription by the testator at the end of the will; (2) which shall be made by the testator in the presence of each of the sub-

scribing witnesses or acknowledged by him to have been so made to each witness; (3) at the time of making such subscription, or of such acknowledgment, declaration by the testator that the instrument so subscribed is his last will and testament, and (4) at least two attesting witnesses, each of whom shall sign his name as such at the end of the will at the testator's request.

This is the method of legally executing testamentary instruments and all the requirements laid down by the Legislature must be complied with. (*Chaffee* v. *Baptist Missionary Convention*, 10 Paige Ch. 85, 91, 93; *Sisters of Charity* v. *Kelly*, 67 N. Y. 409, 413; *Matter of Mackay*, 110 id. 611, 615; Page Wills, § 362.)

In *Lewis* v. *Lewis* (11 N. Y. 220, 223, 226) the Court of Appeals stated that " the legislature have made four things essential to the proper execution and attestation of a will, and a want of conformity to *any* of the requisites will invalidate the instrument as a testament " (italics mine), and that " the statute contemplates the subscription or the acknowledgment thereof, in the presence of the witnesses, and a publication of the instrument as a will, as two distinct acts, and both are necessary to its due execution; and being explicit and clear in terms, courts are not authorized to vary it by construction or to make the one act stand for both."

" Now, it is obvious, that every one of these four requisites, in contemplation of the statute, is to be regarded as essential as another; that there must be a concurrence of all to give validity to the act, and that the omission of either is fatal." (*Remsen* v. *Brinckerhoff*, 26 Wend. 325, 331.)

In the case under discussion there is no proof that the testatrix subscribed this will; it affirmatively appears that she did not do so in the presence of, or acknowledge her signature to, either witness. It may be assumed for the purposes of this case that the request to sign the will as witnesses was both a declaration that the instrument was the maker's last will and testament and her request to the witnesses to sign their names as such.

There can be no question that the burden of proving compliance with all the statutory requirements is upon the proponent. (*Matter of Mullin*, 143 Misc. 256; *Matter of Hitchler*, 25 id. 365; *Matter of Truelsen*, 130 id. 172.)

The proponent stresses the fact that this will is holographic, and, therefore, the requirements of the statute are not to be so strictly and rigidly observed. It is submitted that thus broadly stated this is not the correct interpretation of the decisions. The authorities indicate that the underlying reason for the requirement of publication is as much, if not more, for the protection of the testator as to acquaint the witnesses with the fact that the paper

they are asked to sign is a will, so that the testator himself knows, and gives oral evidence of that knowledge, that the instrument he is about to execute is a will and that a paper of some other nature is not fraudulently put before him. If this be the correct underlying reason for the requirement of publication, then obviously the declaration in the case of a holographic will that the paper the testator is about to execute is his will, need not be quite so clear and decisive as in those cases where the instrument is drawn by another. The fact that the will is holographic is of itself evidence that its maker knew its purport, and this fact is evidence in support, rather than a letting down, of the rule itself. (*Matter of Marley*, 140 App. Div. 823, 825, 826; *Remsen* v. *Brinckerhoff*, 26 Wend. 325, 337; *Matter of Shirley*, 134 Misc. 413, 416; *Matter of Truelsen*, 130 id. 172; *Matter of Paez*, 107 id. 586.)

We cannot close our eyes to any one of the four requirements, for by so doing " the statute prescribing the formalities with which wills should be executed, would be substantially nullified and its wise purpose defeated." (*Woolley* v. *Woolley*, 95 N. Y. 231, 236.)

In *Lewis* v. *Lewis* (11 N. Y. 220) the will in question was signed by decedent in his own handwriting, purported to have been witnessed by two subscribing witnesses and had a proper attestation clause. One of the subscribing witnesses testified that he had no recollection of the occasion except that he was called into the testator's office and signed his name at the testator's request. The other witness testified that testator had a paper on the desk before him, but that it was so folded no part of its contents, nor the testator's signature, was visible. The paper was declared by the testator to be " my free will and deed." The last-mentioned witness did not see the testator sign. It was held that " a signature, neither seen, identified or in any manner referred to as a separate and distinct thing, cannot in any just sense be said to be acknowledged by a reference to the entire instrument by name, to which the signature may or may not be at the time subscribed. The will was not subscribed in the presence of the witnesses, neither was the subscription acknowledged by the testator, and the execution was in this respect defective " (p. 226).

In *Matter of Mackay* (110 N. Y. 611) it appeared that the will was handed to the witnesses so folded they could see no part of the writing, except the attestation clause, and they did not see the testator's signature. Here, too, it was held that " subscribing witnesses to a will are required by law, for the purpose of attesting and identifying the signature of the testator, and that they cannot do unless at the time of the attestation they see it," and " the formalities prescribed by the statute are safeguards thrown around

the testator to prevent fraud and imposition. To this end the witnesses should either see the testator subscribe his name, or he should, the signature being visible to him and to them, acknowledge it to be his signature. Otherwise imposition might be possible and sometimes the purpose of the statute might be frustrated " (pp. 614, 615).

In *Matter of Simpson* (211 App. Div. 408 [2d Dept.]) one of the witnesses who had known the testatrix for a number of years signed a paper at the request of the testatrix, not seeing the latter's signature, nor having any idea it was a will. The other witness who was also an old acquaintance of the testatrix identified her signature, and apparently knew at the time of its execution that it was a will. This witness was unable to state whether the testatrix's signature was there at the time and she did not see the testatrix sign her name. It was held that the requirements of the statute had not been met and the will should not be admitted to probate.

In *Matter of Weeks* (137 Misc. 52) both witnesses were positive that the testatrix did not sign the same in the presence of either of them and that neither witness saw the signature. In denying probate the surrogate said: " There is no proof that the testatrix had signed the will at the time that the witnesses affixed their signatures, and whether signed or not, said signature was not exhibited to the witnesses and was not open to their inspection. The law demands the visibility of the testatrix's signature. The requirements as to execution of the will have not been complied with. There is no proof that the signature of the testatrix was affixed to the will when the witnesses signed, or at any time before."

Of the same general nature are *Matter of Keeffe* (155 App. Div. 575; affd., 209 N. Y. 535) and *Matter of Crill* (124 Misc. 134; affd., 214 App. Div. 849).

Where a testator at the time of the execution of his will places his finger on his name subscribed at the end and acknowledges that it is his last will and testament, but there is no evidence that he subscribed it in the presence of the attesting witnesses, or that he acknowledged in their presence that such subscription was made by him, the will is not properly executed. (*Chaffee* v. *Baptist Missionary Convention*, 10 Paige Ch. 85.)

A case quite in point arose in this (Orange) county (*Rumsey* v. *Goldsmith*, 3 Dem. 494). The witnesses all agreed that the will was not signed in their presence. The person who prepared the will testified that it was signed by deceased in his presence and that while the testator was in the act of signing, one of the attesting witnesses opened the door of the room, looked in, but immediately

closed the door again. This attesting witness testified that she saw the deceased writing and supposed that when she was asked later to become an attesting witness it was the same paper decedent was writing upon when she first looked in the room. The person who prepared the will asked the testator if he acknowledged the paper to be his last will and testament, and the testator answering by an affirmative nod of the head, then directed the witnesses to sign their names in a place indicated. This was the only conversation. The attesting witnesses did not see the testator sign the will, although the paper lay open before them so that the signature must have been visible. There was independent testimony that the testator had signed the will. The paper contained the usual short form attestation clause which, however, was not read by either witness. It was held that the statute had not been complied with in that the will was not signed in the presence of the witnesses or acknowledged to them to have been signed by the testator and that the recitations in the attesting clause could not overcome this lack of proof.

In *Rutherford* v. *Rutherford* (1 Den. 33), an ejectment case, it was held to be a fatal objection to the proof of a will that one of the witnesses neither saw the testator subscribe nor heard him acknowledge his signature to the instrument.

Instead of analyzing the facts of each case, it will be sufficient to say that the following cases are of the same general nature as those heretofore cited and analyzed: *Matter of Ferrick* (106 Misc. 617); *Matter of Turrell* (166 N. Y. 330); *Matter of Pierce* (113 Misc. 311); *Matter of Rogers* (52 id. 412); *Matter of Hitchler* (25 id. 365); *Matter of Abercrombie* (24 App. Div. 407); *Baker* v. *Woodbridge* (66 Barb. 261); *Woolley* v. *Woolley* (95 N. Y. 231); *Mitchell* v. *Mitchell* (16 Hun, 97; affd., 77 N. Y. 596).

*Matter of Redway* (238 App. Div. 653) requires more than passing notice. After the testatrix had signed the will one of the subscribing witnesses called another person to act as such, and, to quote the witness, " when he came in I asked her then if she declared that to be her last will and testament, and I asked if she wanted Mr. Powell and myself to sign as witnesses and she said she did, and Mr. Powell and myself signed it." The witness Powell testified that the will was not signed in his presence; that nothing was said indicating that the testatrix had signed it; he saw no signature upon it and was unable to say at the time of the trial that the signature appearing upon the instrument was made by the woman he met at the attorney's office. It was held that the requisite statutory formality was not observed in the execution of the instrument offered for probate and the decree directing probate was reversed on the law.

*Matter of Phillips* (98 N. Y. 267), relied upon by the proponent, is distinguishable from the instant case in that one of the subscribing witnesses was a practicing lawyer (a fact in itself lending some presumption of due execution) who testified that the testator's name was subscribed to the will at the time he, the witness, signed as such.

*Matter of Laudy* (148 N. Y. 403) contains the distinguishing feature that one witness testified to the execution of the will as required by statute, while the other witness testified that the testator's signature was not visible, because of the manner in which the will was folded. Here, there was a question of fact presented and the Court of Appeals refused to interfere with the finding of fact by the General Term that the will was properly executed.

The objections will be sustained and the paper writing offered denied probate.